UNITED STATES of America, Appellee,

v.

Alan Peter QUIN, Defendant, Appellant.

No. 87–1349.

United States Court of Appeals,
First Circuit.

Sept. 15, 1987.

Decided Jan. 8, 1988.

John M. Garcia with whom Elisa Bobonis Lang and John M. Garcia Law Offices, Hato Rey, P.R., were on brief, for defendant, appellant.

Warren Vazquez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before COFFIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and LAGUEUX,* District Judge.

BAILEY ALDRICH, Senior Circuit Judge.

This 28 U.S.C. § 2255 motion presents some troublesome questions, not the least of which are precisely what occurred and what is claimed. The court not only denied the motion, but imposed a $2,000 sanction upon counsel, pursuant to Fed.R.Civ.P. 11, for "an unreasonable and vexatious twisting of criminal procedure [that was] disturbing and frivolous."

The facts were these. One Burke, as owner and master, and defendant Quin as crew, were the complement of an American vessel seized by the Coast Guard off the Virgin Islands and found to contain 41,000 pounds of marijuana. Following indictment of both, defendants filed a motion to suppress. Prior to testimony and hearing thereon, the following occurred in open court,

> MR. WASHOR: Your Honor, the Defendant Quin is prepared to waive his right to a jury trial. In addition to which the Defendant Quin is prepared to proceed with a Motion to Suppress at the conclusion of the Motion to Suppress in the event that the Court is so inclined to deny the suppression hearing and rule favorably for the government, Defendant Quin is prepared to stipulate that the testimony adduced at the suppression hearing constitute along with a few additional stipulations [of jurisdictional facts] that had been agreed upon between government and Counsel, that said mate-

* Of the District of Rhode Island, sitting by desig-  nation.

rial constitute the entire trial so that this Court can rule the guilt or innocence of the Defendant Quin.

Following this, the judge having explained to the defendants that this would substitute himself for the jury, and they having expressed agreement, defendants executed what was, in terms, a waiver of jury, pursuant to Fed.R.Crim.P. 23(a). Manifestly, this was not a waiver of trial. We note, however, that Quin's counsel had previously stated in the lobby, "[I]t's equivalent to the defendant pleading guilty after the Motion to Suppress," an assertion not then contradicted by the government, and that somewhat bedevils the issues now before us. Given the content of the stipulated evidence, it did seem clear that, as a practical matter, only one result was possible if suppression was denied.

When this proposed program was carried out, the court denied the motion to suppress and made findings of guilty. *United States v. Burke,* 540 F.Supp. 1282 (D.P.R. 1982). On appeal the only matter presented was the denial of the motion.[1] We affirmed. *United States v. Burke,* 716 F.2d 935 (1st Cir.1983).

Quin is an Englishman and, although married to an American citizen, after having served some three years for this felony conviction without further complaint, he found himself faced with deportation proceedings. 8 U.S.C. § 1251(a)(11) (1982). He then brought the present 28 U.S.C. § 2255 motion, alleging,

> Petitioner argues that he was denied effective assistance of counsel because his attorney failed to give him the basic information indispensible to petitioner's decisions as to whether to seek a trial by jury. Petitioner did not realize that a judgment would be rendered by the court without his being able to testify on his own behalf and without his being able to present defenses based on his knowledge of the activities in question and the circumstances of his presence on the boat. Additionally, petitioner's counsel's fail-

ure to impart any advise regarding the direct and indirect consequences of the stipulation left plaintiff without the knowledge that he was subject to deportation based upon his conviction.

Because the motion to suppress was denied, petitioner's decision to stipulate to a bench-trial was tantamount to a guilty plea in that petitioner was by virtue of the stipulation denied an opportunity to defend himself on the merits of the specific charges against him. He also thereby found himself subject to mandatory deportation. By neglecting to apprise petitioner of the most basic direct and inescapable collateral consequences of the stipulation in question, petitioner's counsel denied petitioner the effective assistance of counsel to which petitioner was entitled under the Constitution.

■ While sought to be more embracive, the basic thrust of defendant's argument is that he waived jury and acceded to a bench trial in ignorance of the deportation consequences of a guilty finding due to the failure of his counsel to inform him thereof; that this constituted constitutionally ineffective counsel, and that he is now entitled to start over. Passing the fact that deportation in this context is generally regarded as a collateral consequence, only, viz., legally irrelevant, even as to an outright guilty plea, *United States v. Gavilan,* 761 F.2d 226 (5th Cir.1985); *United States v. Russell,* 686 F.2d 35 (D.C.Cir.1982); *Fruchtman v. Kenton,* 531 F.2d 946 (9th Cir.1976), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178; *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975); *but see Nunez Cordero v. United States,* 533 F.2d 723 (1st Cir.1976), *post,* counsel is unable to suggest, nor can we conceive, any possible relationship, or bearing, that even the most direct consequences of a guilty finding could have upon a defendant's choosing between a jury and a bench trial. At issue here is the likelihood of a finding, not the consequences. Civil Rule 11[2] imposes a duty on counsel to be able to

---

**1.** In particular, there was no contention that defendant "did not realize that a judgment

would be rendered by the court without his being able to testify." See post.

**2.** Although § 2255 proceedings are, strictly criminal, and § 2254 (habeas corpus) civil, the

make some minimum showing, inferential or otherwise, to support his claim.[3] Here the claim was empty on its face. *Cf. United States v. Campbell*, 778 F.2d 764 (11th Cir.1985).[4] We could not fault the court's conclusion that insofar as the petition relied on a jury waiver, it was so palpably unreasonable as to warrant censure.

At the same time, defendants are entitled to representation, and Rule 11 is not intended to be an *in terrorem* obstacle. *See Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536–37 (9th Cir.1986). With this in mind we turn to defendant's attempt to analogize his conduct with a plea of guilty. Manifestly, deportation is a serious matter, and it is entirely rational to believe that the possibility of such a consequence would enter into a defendant's thinking when considering whether to plead. While we held in *Nunez Cordero, ante,* that the court had no duty to inquire or inform as to deportation consequences under Fed.R.Crim.P. 11(c) before accepting a guilty plea, we recognized that a court might consider such ignorance in assessing "fair and just" reason for withdrawal. The court in *Government of Virgin Islands v. Pamphile*, 604 F.Supp. 753 (D.V.I.1985), correctly read us as saying there could be a difference between the duty of the court, and the duty of effective counsel. The difficulty, however, is that we consider defendant's equating his refraining from testifying with a guilty plea a gross exaggeration. The prepared appendix does not show what this foregone testimony would have been, but we find a statement in the record. The most material part is that defendant "had no knowledge as to the contents of the cargo," and that, "as a crew member [he] had no control over the ship and thus could not prevent the captain of the vessel from taking

the action he took on the high seas." The second of these allegations falls far short of suggesting that defendant was shanghaied, and the first is preposterous. Who could believe that on a vessel small enough to be handled by two men, loaded with 41,000 pounds of marijuana—which smelled even on deck—defendant was not aware of the content. Equally preposterous is defendant's claim that while he chose not to testify when he faced serious felony sentences, he would have testified had he known of deportation.

The contention that ineffective counsel caused defendant to commit a material mistake supports neither materiality nor causation.

■ We come to a further matter. *Nunez Cordero* involved an outright plea of guilty. Prior to sentence the defendant learned of the deportation consequence, and sought to withdraw his plea. The court refused. We recognized the court's having discretion, and supported its failure to exercise it in defendant's favor, even though, because of the timetable, the government was not prejudiced. How here, where the government would be heavily prejudiced, could it possibly be thought that we would reverse? In light of *Nunez Cordero,* of which counsel was aware, failure was foreordained and the appeal was totally frivolous, except as to the sanction.

While we have no Fed.R.Civ.P. 11, we have similar expectations of counsel. *Cf. Des Vignes v. Department of Transportation, F.A.A.*, 791 F.2d 142 (Fed.Cir.1986); *Kelly v. United States*, 789 F.2d 94 (1st Cir.1986); *Condado Home Care Program, Inc. v. Cooperativa de Seguros de Vida*, 775 F.2d 457 (1st Cir.1985); *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64 (1st

---

Civil Rules are equally applicable. Rule 12, Rules Governing Section 2255 Proceedings in the United States District Courts.

**3.** Signature of attorney on motion or pleading constitutes a certificate that it "is warranted by existed law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11.

**4.** While we do not agree with the district court's regarding counsel's citation of *Campbell* as an element of misconduct—good lawyering, indeed, often a duty to the court, calls for disclosing unfavorable decisions—citing unfavorable matter scarcely satisfies the obligations imposed by the rule.

Cir.1984). We refrain, however, from assessing penalties for a frivolous appeal, but we believe it not unfair to permit counsel's continued clearly unsupportable conduct to stifle even sympathy for the consequences imposed on him by the district court.

A word with respect to our concurring brother. Assuming that custody, the basic requirement, and essential for initial jurisdiction, existed when the proceeding was commenced,[5] the case did not become moot when custody ceased, but remained alive because of the judgment's effect upon the purely collateral matter of a civil nature, namely deportation proceedings. *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).[6] But this did not mean that Quin was pursuing traditional habeas relief. There may be much merit in our brother's apprehension that in the ordinary case, where a penal consequence is genuinely at issue, counsel's fear of personal sanctions might impermissably restrict free recourse to the Great Writ. While, as he concedes, the court may look to the Criminal Rules or the Civil Rules, we quite agree that the latter should not be applied if that "would be inconsistent or inequitable in the overall framework of habeas corpus." *United States v. Frady*, 456 U.S. 152, 166–68 n. 15, 102 S.Ct. 1584, 1593–94 n. 15, 71 L.Ed.2d 816 (1982). Here, however, Quin is seeking to achieve by the § 2255 petition a purely civil effect, the prevention of deportation.

If Quin were seeking the same objective by attacking the res judicata effect of a prior civil proceeding, no one would suggest that counsel should not be held to the requirements of Rule 11. Should counsel's obligations be any the less because the proceeding which brought on the threat of deportation was criminal, or because habeas corpus provided the mechanical means for attacking the judgment? We see no reason why counsel seeking to inject a frivolous roadblock in a civil matter should not be held to the standard of good faith called for by the civil rule. He has obtained an undeserved delay in civil proceedings by totally unwarranted conduct. That should be enough to look to Rule 11.

Finally, we cannot leave this case without commenting on government counsel. The sanction payment ordered under Rule 11 in this case was to go to the clerk of court, not to the opponent. We do not say that the other party should never be heard in support of such a sanction, but counsel who do so should consider what is in their own eye before beholding what may be in their brother's. Matthew 7:3. In addition to charging that the motion was merely an attempt to delay the deportation proceedings, and that *"the longer it takes* for the criminal legal matters to conclude, the longer it takes for the deportation proceedings to be initiated and *the more prejudice the United States government has to endure,"* (emphasis supplied), government counsel say defendant's counsel was properly sanctioned because he failed to proceed "in an expeditious manner" by not marking his motion for trial. "Counsel representing a party in any legal action is expected to proceed with his case in a responsible manner...." Who is saying this? After receipt of defendant's original motion the court ordered him to file a memorandum in support within 20 days, and ordered the government to respond within 10 days thereafter. Defendant duly filed on February 19, 1986. Instead of responding, the government did nothing until the court entered a new order against it on October 23, a matter of eight months. Now comes the saga of movant's counsel's unconscionable delay, indignantly voiced by government counsel who, if he believed his charge of improperly motivated delay (an assertion made to us four times in oral argument), indisputably violated both his duty to his client to terminate it and his

---

**5.** —a matter not clear on the record, but not raised by the government, and that need not be pursued.

**6.** While *Carafas* holds that the civil consequences of the conviction are sufficient to prevent the jurisdiction originally attaching to fail, (any more than would the cessation of diversity in diversity cases) or for the case to become moot, its discussion of civil consequences cast no light on the core values involved, except, of course, to recognize their status short of liberty in the traditional meaning.

658

obligation to the court to respond to its order. Government counsel would do well to ponder.

*Affirmed.*

COFFIN, Circuit Judge, concurring in part and dissenting in part.

While I agree with the Court's conclusion that the district court properly denied defendant's section 2255 motion, I respectfully dissent on the sanctions question.

After researching the question as exhaustively as I could, I have found no case in which a circuit court has, pursuant to Rule 11 of the Federal Rules of Civil Procedure, imposed sanctions upon a defendant in the context of a habeas corpus proceeding, whether brought pursuant to 28 U.S.C. § 2254⁻ or 28 U.S.C. § 2255.

Rooted in "immemorial antiquity" predating the Magna Carta, the Great Writ of habeas corpus has preserved human liberty in the face of illegitimate governmental restraints upon our most precious freedoms. *Fay v. Noia,* 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963) (quoting *Secretary of State for Home Affairs v. O'Brien,* [1923] A.C. 603, 609 (H.L.)). "[I]ts function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." *Fay v. Noia,* 372 U.S. at 401–02, 83 S.Ct. at 838–29. For federal courts, "there is no higher duty than to maintain it unimpaired." *Id.* at 400, 83 S.Ct. at 828 (quotations and citations omitted).

Given the role of the Great Writ throughout our history, and even long before, we should be loath to impose procedural rules that might impede a prisoner's effort to seek that remedy. *See Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969) ("The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."). We should consider such action only if it is clearly authorized and indispensable to prevent frivolous litigation. In my view neither condition has been met.

The federal habeas corpus proceeding provided by 28 U.S.C. § 2255 is "a further step in the criminal case in which petitioner is sentenced." *United States v. Frady,* 456 U.S. 152, 182–83 & n. 6, 102 S.Ct. 1584, 1601–02 & n. 6, 71 L.Ed.2d 816 (1982) (Brennan, J., dissenting) (quotations and citations omitted). It is not, therefore, automatically subject to the rules of either civil or criminal procedure. *Id.* at 166–68 n. 15, 102 S.Ct. at 1593–94 n. 15. (opinion of the Court); *Sassoon v. United States,* 549 F.2d 983, 984 (5th Cir.1977). *Compare Schiebelhut v. United States,* 318 F.2d 785 (6th Cir.1963) (Fed.R.Civ.P. 33 held applicable to section 2255 proceedings) *with Sullivan v. United States,* 198 F.Supp. 624 (S.D. N.Y.1961) (Fed.R.Civ.P. 33 does not apply to section 2255 proceedings). *See also Schlanger v. Seamans,* 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997 n. 4, 28 L.Ed.2d 251 (1971) (rules of civil procedure do not automatically apply in section 2254 cases); *Harris v. Nelson,* 394 U.S. at 298, 89 S.Ct. at 1090 (same); *Dillard v. Blackburn,* 780 F.2d 509, 514 (5th Cir.1986).

Rule 12 of the rules governing habeas corpus proceedings under section 2255 provides that "[i]f no procedure is specifically prescribed by these rules, the district court [considering a motion under § 2255] may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and *may* apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules." 28 U.S.C. § 2255 Rule 12 (emphasis added). The Supreme Court has interpreted this rule, and the Advisory Committee Note in reference thereto, to mean that in considering a section 2255 motion, a district court may apply a rule of civil or criminal procedure so long as the application of such a rule would not be "inconsistent or inequitable in the overall framework" of habeas corpus. *United States v. Frady,* 456 U.S. at 167–68 n. 15, 102 S.Ct. at 1594 n. 15.

In my view, the imposition of sanctions under Fed.R.Civ.P. 11 upon a defendant or his counsel in the context of a section 2255 proceeding would be inconsistent with the

purpose and reality of habeas corpus relief. The habeas corpus opportunity, being the last procedural device available to a criminal defendant asserting a claim to liberty, should not be lost to one who presses his claim even against the weight of authority. Indeed, given the fact that the overwhelming bulk of habeas motions are denied, it cannot be doubted that many could be deemed "frivolous." I cannot imagine a more effective way of chilling putative counsel in habeas cases than the assessment of substantial fees for cases ultimately determined to be without merit.[1] And yet how many of our most significant decisions resulted from intrepid and imaginative counsel laboring against precedent?

It is not that district courts are helpless. They can and should utilize procedures available under the habeas rules for dismissing patently frivolous habeas motions in summary fashion. *E.g.* 28 U.S.C. § 2255 Rule 4(b) ("If it plainly appears from the face of the motion, and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief ... the judge shall make an order for its summary dismissal); *id.* Rule 8(a) ("If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates."); *see also* 28 U.S.C. § 2254 Rule 4.

These considerations seem to me compelling. I am, therefore, not surprised that I have found no case in which a federal court has considered, let alone approved, the use of Civil Rule 11 sanctions in the context of habeas proceedings. I am most reluctant to embark upon that apparently unprecedented course of action.

Finally, although recognizing that Quin's threatened deportation, stemming directly from his criminal conviction, is of sufficient collateral effect to warrant habeas jurisdiction, the court suggests that sanctions may be imposed because he was not "pursuing

traditional habeas relief." I disagree. If the collateral effects are sufficiently serious to support continuing habeas jurisdiction, then the threat to liberty is of sufficient moment that we ought not to impose sanctions on even frivolous attempts to preserve that liberty.

---

1. I can conceive of some situations, however, where the imposition of fee sanctions against counsel may not have such a detrimental, chilling effect. Two examples come to mind. One would be a habeas proceeding in which defense counsel intentionally falsified facts. Another would be a situation where counsel repeatedly filed identical habeas motions after a district court had decided the merits of the underlying issue against the petitioner. In these situations, the imposition of Rule 11 sanctions against counsel would not be inconsistent with the purposes underlying the remedy of habeas corpus.