**UNITED STATES, Appellee,**

v.

**Geraldo GONZALEZ, Defendant, Appellant.**

No. 99–1179.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1999.

Decided Jan. 24, 2000.

Kern Cleven for appellant.

Arnold H. Huftalen, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before STAHL, Circuit Judge,
BOWNES, Senior Circuit Judge, and
LIPEZ, Circuit Judge.

STAHL, Circuit Judge.

Defendant-appellant Geraldo Gonzalez appeals from the district court's refusal to allow him to withdraw his plea before sentencing, and its failure to conduct an evidentiary hearing on the motion seeking such withdrawal. We affirm.

## I.

### *Background*

On April 10, 1997, Gonzalez, a national of Cuba who has resided in the United States since 1980, was indicted on three separate charges. Attorney Phillip Desfosses was appointed to represent him. On August 4, 1997, represented by Desfosses's partner Harry Starbranch, Gonzalez pleaded guilty to two charges: mail fraud, in violation of 18 U.S.C. § 1341 (1994), and the use of an unauthorized access device to obtain property exceeding $1,000 in value, as proscribed by 18 U.S.C. § 1029(a)(2) (1994). During his plea colloquy, Gonzalez admitted that the losses resulting from his crimes in fact exceeded $10,000.

Gonzalez successfully moved to continue sentencing on November 10, 1997, and on December 25, 1997, he requested substitute counsel. On December 30, 1997, Desfosses moved to withdraw from the case. In January, 1998, the court granted Desfosses's motion and appointed attorney Sven Wiberg to represent Gonzalez.

On September 4, 1998, following several more continuances which further postponed sentencing, Gonzalez moved to withdraw his plea pursuant to Federal Rule of Criminal Procedure 32(e) ("Rule 32(e)"). Gonzalez's Rule 32(e) motion averred that he had not been informed of his guilty plea's "potential and/or likely adverse immigration consequences" until after the plea was made. The motion included a letter from Desfosses confirming Gonzalez's assertion.[1] Gonzalez argued that Desfosses's failure to advise him of the immigration issue constituted ineffective assistance of counsel and rendered his plea defective. Gonzalez did not request, and the court did not conduct, an evidentiary hearing on the Rule 32(e) motion.

On December 7, 1998, the court denied Gonzalez's motion. Gonzalez filed a "Motion to Reconsider Motion to Withdraw Plea," which was denied on January 4, 1999. The next day, the court sentenced Gonzalez to twenty-seven (27) months of imprisonment and ordered him to pay $17,273.03 in restitution.

In addition to his criminal punishment, Gonzalez's conviction subjected him to potential immigration-related consequences. The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* (1994 & Supp. II 1996), enumerates various "aggravated felonies" the commission of which will render an alien deportable. *See id.* § 1101(a)(43); *id.* § 1227(a)(2)(A)(iii). This list includes "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." *Id.* § 1101(a)(43)(M). Because Gonzalez's

---

1. It appears that Gonzalez learned of these consequences from a third party.

fraudulent activities caused losses exceeding $10,000, he had committed an "aggravated felony" under the INA, and had therefore become subject to deportation.

The INA directs the Attorney General to "take into custody any alien who ... is deportable by reason of having committed [among other things, any aggravated felony] ... when the alien is released." *Id.* § 1226(c)(1). The Attorney General may release such an alien only in narrowly limited circumstances not here applicable.[2] This regime reflects amendments embodied in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 ("IIRIRA").[3] As a native of Cuba, which has no deportation agreement with the United States, Gonzalez now faces the possibility of indefinite administrative detention following his release from prison.

## II.

### Discussion

Gonzalez advances several arguments in his attempt to reverse the district court's refusal to grant his Rule 32(e) motion. He also challenges the court's failure to hold an evidentiary hearing prior to ruling on the motion. We address these arguments in turn.

### A. Motion to Withdraw Plea

■ The heart of Gonzalez's claim is that neither his attorneys nor the district judge advised him that if he pleaded guilty, he would be deemed "deportable" and subject to detention by the INS. He further complains that the district court failed to warn him of the possibility of restitution. Gonzalez contends that these deficiencies entitled him to withdraw his plea. We review the trial court's refusal

to grant a change of plea only for abuse of discretion, *see, e.g., United States v. Raineri,* 42 F.3d 36, 41 (1st Cir.1994); *United States v. Austin,* 948 F.2d 783, 787 (1st Cir.1991), and finding none, we affirm.

■ Rule 32(e) states that "[i]f a motion to withdraw a plea of guilty ... is made before sentence is imposed, the court *may* permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed.R.Crim.P. 32(e) (emphasis added). A defendant thus has no absolute right to withdraw a plea. *See United States v. Muriel,* 111 F.3d 975, 978 (1st Cir.1997); *United States v. Isom,* 85 F.3d 831, 834 (1st Cir.1996). A "fair and just reason" is a necessary, but not sufficient, predicate to plea withdrawal. *See United States v. Doyle,* 981 F.2d 591, 594 (1st Cir.1992) ("A defendant may withdraw a guilty plea prior to sentencing only upon a showing a fair and just reason for the request."); *see also Raineri,* 42 F.3d at 41 (same).

Rule 32(e) motions must be considered in the general context of Fed.R.Crim.P. 11 ("Rule 11"), which governs the entry of all guilty pleas. Rule 11(c) provides that:

[b]efore accepting a plea of guilty ... the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, ... the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the

---

**2.** To qualify for such release, an alien must be a witness, a potential witness, a person cooperating with an investigation into criminal activity, or an immediate family member of such a person. *See* 8 U.S.C. § 1226(c)(2) (Supp. II 1996).

**3.** Prior to IIRIRA, the INA permitted (but did not require) release of aggravated felons who did not pose a threat to society pending their removal from the United States. 8 U.S.C. § 1252(a)(2)(B) (1995), *amended by* 8 U.S.C. § 1226(c) (Supp. II 1996).

defendant to make restitution to any victim of the offense. Fed.R.Crim.P. 11. Yet Rule 11(h), labeled "Harmless Error," states that "[a]ny variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded."

■ In evaluating Rule 32(e) motions, a court's central concern is whether the plea was "voluntary, intelligent and knowing, within the meaning of Rule 11." *United States v. Marrero–Rivera*, 124 F.3d 342, 347 (1st Cir.1997); *see also United States v. Cotal–Crespo*, 47 F.3d 1, 3 (1st Cir. 1995); *United States v. Allard*, 926 F.2d 1237, 1243 (1st Cir.1991). In addition, the district court must consider four factors: (1) the force of the defendant's reason for the change of plea; (2) the timing of the request; (3) whether or not the defendant asserts innocence in connection with his plea withdrawal; and (4) whether a plea agreement had been reached. *See Marrero–Rivera*, 124 F.3d at 347; *Isom*, 85 F.3d at 834; *Cotal–Crespo*, 47 F.3d at 4. We address the final three factors first and then turn to the reasons for Gonzalez's requested plea withdrawal and whether those reasons render his plea involuntary.

■ The timing of Gonzalez's motion casts doubt on his entitlement to a plea withdrawal. "[A] long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." *Doyle*, 981 F.2d at 595; *see also Isom*, 85 F.3d at 838–39. Of course, when a defendant seeks to withdraw his plea based on knowledge that was obtained after the plea, the relevant temporal gap is not the time between the Rule 32(e) motion and the original plea, but the time between his discovery of the new information and the filing of his motion. Here, this gap is extensive. In the letter from Desfosses that Gonzalez submitted with his Motion to Withdraw Plea, Desfosses stated that "[i]t was not until the attorney-client relationship between myself and Mr. Gonzalez had started to breakdown did he inform me

that the law had recently been changed regarding the deportation of Cubans due to felony convictions." Thus, Gonzalez became aware of his plea's immigration consequences sometime *before* the end of December, 1997, when Desfosses sought to remove himself from further representation. Yet, notwithstanding that acquired knowledge, Gonzalez did not move to withdraw his plea until September, 1998. We have previously rejected plea withdrawal motions in which the relevant gap was six months, *see Doyle*, 981 F.2d at 595, two months, *see Isom*, 85 F.3d at 839, three weeks, *see United States v. Keefe*, 621 F.2d 17, 18 (1st Cir.1980), and even thirteen days, *see United States v. Ramos*, 810 F.2d 308, 313 (1st Cir.1987).

Gonzalez's consistent failure to assert his innocence also weighs against the reversal of the district court's decision. "Courts look more hospitably on a motion to withdraw a guilty plea when the motion is coupled with an assertion of innocence.... [T]he absence of a claim of innocence weighs in favor of allowing a guilty plea to stand." *Doyle*, 981 F.2d at 596. Gonzalez at no time asserted his innocence. Finally, Gonzalez does not dispute that he signed a plea agreement, and that signed agreement casts further doubt on his claims.

We thus turn to the three purported bases of Gonzalez's Motion to Withdraw Plea, and the question whether in light of these claims, his plea was "knowing, intelligent and voluntary."

### 1. *Ineffective Assistance of Counsel*

■ The principal argument that Gonzalez makes for his claim that his plea was defective under Rules 11 is that his counsel failed to advise him of the plea's immigration consequences before it was offered. Thus, Gonzalez claims, he was entitled to withdraw his plea. We disagree.

■ In 1984, the Supreme Court established the now-familiar standard for constitutionally ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the plea context, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Isom,* 85 F.3d at 837 (same); *Knight v. United States,* 37 F.3d 769, 774 (1st Cir.1994).

Even if Gonzalez could demonstrate ineffective assistance of counsel, he cannot show the necessary prejudice. First, he had previously been convicted of crimes in the state of New Hampshire that exposed him to immigration consequences identical to those resulting from his federal conviction. On July 19, 1996, Gonzalez was arrested in Nashua, New Hampshire, and charged with (1) possession of marijuana with intent to sell and (2) conspiracy to possess marijuana with intent to sell. He was convicted on both counts and on July 2, 1999, the New Hampshire Supreme Court upheld his convictions. Under the INA, those crimes, just like his federal crimes, constitute aggravated felonies. *See* 8 U.S.C. § 1101(a)(43) (defining term "aggravated felony" to include "illicit trafficking in a controlled substance ... including a drug trafficking crime" and to apply to such activity "whether in violation of Federal or State law").

■ Even if we were to ignore his state court convictions, and even if we were to assume—despite a dearth of evidence on the subject—that Gonzalez would not have pleaded guilty had he known of his plea's immigration consequences, we still would not regard Desfosses's representation as constitutionally defective. Along with numerous other courts of appeals, we have held that deportation is only a *collateral* concomitant to criminal conviction. *See, e.g., United States v. Quin,* 836 F.2d 654,

655 (1st Cir.1988). Counsel's failure to advise a defendant of a collateral consequence is a legally insufficient ground for a plea withdrawal. *See, e.g., id.; United States v. George,* 869 F.2d 333, 337 (7th Cir.1989) ("While the Sixth Amendment assures an accused of effective assistance of counsel in 'criminal prosecutions,' this assurance does not extend to collateral aspects of the prosecution."); *United States v. Cariola,* 323 F.2d 180, 186 (3d Cir.1963) (finding "no basis for holding that the finality of a conviction depends upon a contemporaneous realization by the defendant of the collateral consequences of his plea"); *United States v. Parrino,* 212 F.2d 919, 921–922 (2d Cir.1954) (same).

In *Quin,* the defendant had "waived jury and acceded to a bench trial in ignorance of the deportation consequences of a guilty finding due to the failure of his counsel to inform him thereof; [defendant argued] that this constituted constitutionally ineffective counsel, and that he [was thus] entitled to start over." *Quin,* 836 F.2d at 655. We disagreed, noting that as a "collateral consequence" of conviction, deportation was "legally irrelevant, even as to an outright guilty plea." *Id.; see also George,* 869 F.2d at 337 ("A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution."); *United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) ("[A]n attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel."); *United States v. Campbell,* 778 F.2d 764, 766–67 (11th Cir.1985) (finding no attorney obligation to inform client of plea's immigration consequences); *Sanchez v. United States,* 572 F.2d 210, 211 (9th Cir.1977) (same); *Parrino,* 212 F.2d at 921, 923 (2d Cir.1954) (holding that where evidence was clear that defendant had asked counsel whether he could be deported after pleading guilty, and counsel had unequivocally, but erroneously, replied "no," counsel had

not been constitutionally ineffective and withdrawal of guilty plea was not required).

Although Gonzalez recognizes the doctrine of collateral consequences, he contends that "those cases relying [on it] may not have aged well." This claim is grounded only in conclusory assertions that, since IIRIRA's passage, "various routes of judicial and administrative relief" that were once available to deportable felons are foreclosed, and that now, his deportation—or indefinite administrative detention—is "to be expected virtually by operation of law."

██ "[I]n a multi-panel circuit, newly constituted panels, generally speaking, are bound by prior decisions on point." *Irving v. United States*, 49 F.3d 830, 833 (1st Cir.1995) (quoting *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth.*, 991 F.2d 935, 939 n. 3 (1st Cir.1993)) (internal quotation marks omitted). Gonzalez implicitly invokes one of this rule's noted exceptions, which "pertains to those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 592 (1st Cir.1995).

██ Gonzalez has failed to persuade us that our precedents regarding the collateral nature of deportation require revisitation. Gonzalez appears to contend that the crimes for which he was convicted were only recently reclassified as "aggravated felonies," and that *Quin*, which predates IIRIRA, is therefore inapplicable. Moreover, he notes that under the amended INA, the Attorney General is required to take him into custody immediately upon his release from prison, and to place him into automatic, indefinite, and unreviewable administrative detention. In light of this statutory regime, Gonzalez suggests, the immigration consequences of his guilty plea can no longer be considered merely collateral. The first argument, while descriptively sound, is irrelevant; the second is legally flawed.

First, the decisions Gonzalez seeks to overturn nowhere address, much less rely upon, the distinction between "aggravated felonies" and other grounds for deportability. Indeed, the term "aggravated felony" was first introduced into immigration jurisprudence in the Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7342, 102 Stat. 4181, 4469. That act was passed in November of 1988, *after Quin, Parrino, Sanchez,* and *Campbell* had issued. The collateral nature of deportation is not affected by IIRIRA's expansion of the "aggravated felon" category, because the immigration consequences of a plea are collateral irrespective of the reason for which an alien is deemed deportable.

Second, contrary to Gonzalez's claims, IIRIRA did not so substantially alter the treatment of individuals in his situation as to warrant reconsideration of whether deportation is still a collateral consequence of conviction. Even prior to IIRIRA's passage, any alien who committed an aggravated felony was considered deportable, *see* 8 U.S.C. § 1251(a)(2)(A)(iii) (1995), *amended by* 8 U.S.C. § 1227 (Supp. II 1996), and the Attorney General was directed to apprehend any such alien upon his or her release from prison, *see* 8 U.S.C. § 1252(a)(2)(A) (1995), *amended by* 8 U.S.C. § 1226 (Supp. II 1996). Without minimizing the significance of the IIRIRA, we note that it is only relevant to this case insofar as it curtailed the Attorney General's discretion to release such aliens. *Compare id.* § 1252(a)(2)(B) (1995), *amended by* 8 U.S.C. § 1226(c)(2) (Supp. II 1996) (allowing release of any alien who "demonstrate[d] ... that [he or she was] not a threat to the community and [was] likely to appear before any scheduled hearings") *with* 8 U.S.C. § 1226(c)(2) (prohibiting release of such aliens).

Gonzalez argues that for aliens like him, who hail from countries with which the United States has no deportation agreement, this shift will result in detention that is permanent, unreviewable, and automatic. In fact, administrative detention by the INS is neither permanent nor unreviewable, and the fact that such detention might "be expected virtually by operation of law" does not alter its status as a collateral consequence of conviction.

Although 8 U.S.C. § 1226(c)(2) prohibits permanent release of criminal aliens, regulations promulgated by the INS authorize the temporary release—pending ultimate removal—of any alien who is deportable on the basis, inter alia, of having committed an aggravated felony. *See* 8 C.F.R. § 241.4. Such release, which may be narrowly circumscribed,[4] is available (but not required) "[i]f such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk." *Id.* In addition, interim procedures recently established by the INS provide for regular review of each detained alien's circumstances, ensuring repeated reevaluation of such aliens' eligibility for temporary release. *See* United States Department of Justice, INS, Memorandum from Michael A. Pearson, Executive Associate Commissioner, Office of Field Operations, Interim Changes and Instructions for Conduct of Post–Order Custody Reviews (Aug. 6, 1999), *reprinted in Chi Thon Ngo v. Immigration and Naturalization Service,* 192 F.3d 390, 399–401 (3d Cir.1999). Because Gonzalez cannot be deported to Cuba for the foreseeable future, there is the possibility that he may receive the benefit of the regulations notwithstanding the statute's apparent blanket proscription. Contrary to his claims, then, his potential for indefinite detention would be neither beyond review nor necessarily permanent.

Second, federal courts—including this one—have previously found various "automatic" consequences of conviction to be merely "collateral." *See, e.g., Nunez Cordero v. United States,* 533 F.2d 723, 726 (1st Cir.1976) ("We can readily imagine that a court might be willing to grant leave to withdraw" when defendant learned, post-plea, of "mandatory deportation" resulting from conviction, "[b]ut we cannot say that a court must grant leave."); *United States v. Crowley,* 529 F.2d 1066, 1072 (3d Cir.1976) (concluding that the automatic loss of a municipal job upon felony conviction was a collateral consequence of a plea); *Meaton v. United States,* 328 F.2d 379, 381 (5th Cir.1964) (automatic loss of rights to vote and to travel abroad upon felony conviction were collateral consequences of a plea). What renders the plea's immigration effects "collateral" is not that they arise "virtually by operation of law," but the fact that deportation is "not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility." *Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir.1976) (quoting *Michel v. United States,* 507 F.2d 461, 465 (2d Cir. 1974)); *see also George,* 869 F.2d at 337 (emphasizing that deportation "may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding"); *Sanchez,* 572 F.2d at 211 (noting that the key inquiry is whether a consequence "is controlled by an agency which operates beyond the direct authority of the trial judge"). However "automatically" Gonzalez's deportation—or administrative detention—might follow from his conviction, it remains beyond the control and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.

---

4. An alien released pursuant to this provision may be required, among other things, to post a bond ensuring ultimate return, *see* 8 C.F.R. § 241.4, to report to an INS officer periodically, to undergo physical or mental examinations, or to obtain approval before traveling beyond a certain distance, *see id.* § 241.5.

We therefore reject the argument that recent amendments to the INA have so altered the relationship between conviction and deportation that revisitation of our prior holdings on that relationship is required. These holdings bar any ineffective assistance claims based on an attorney's failure to advise a client of his plea's immigration consequences. Gonzalez's ineffective assistance argument thus fails to support his Rule 32(e) motion.

### 2. The District Court's Failure To Inform Gonzalez of His Plea's Immigration Consequences

Gonzalez's second argument is that the district court's failure to advise him of his plea's immigration consequences deprived the plea of the requisite voluntariness. This claim fails for reasons akin to those that doomed his ineffective assistance of counsel claim.

We have previously identified "the defendant's knowledge of the consequences of the guilty plea" as a core concern of Rule 11 which must be satisfied if a plea is to be upheld. *Isom*, 85 F.3d at 835; *see also Cotal–Crespo*, 47 F.3d at 4. But because deportation is a collateral consequence of a guilty plea, district courts are *not* obliged to grant plea withdrawal motions filed by defendants who realize, postplea, the immigration implications of their conviction. *See, e.g., Nunez Cordero*, 533 F.2d at 726; *Durant v. United States*, 410 F.2d 689, 692 (1st Cir.1969); *see also Campbell*, 778 F.2d at 767; *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982);

*Fruchtman*, 531 F.2d at 949; *Michel*, 507 F.2d at 465. Given the facts of Gonzalez's case, we see no more reason to disturb our precedent in this context than we did above.[5]

### 3. The District Court's Failure to Warn Gonzalez of Potential Restitution

■ Gonzalez further asserts that his plea colloquy was defective because he was never informed that he would have to pay $17,273.03 in restitution to his victims. This argument is unavailing. We have held that where a defendant who is not warned of the potential for restitution is nevertheless ordered to pay such restitution, but in an amount less than the total potential criminal fine of which he *was* warned, the arguable error is harmless. *See, e.g., Raineri*, 42 F.3d at 42; *United States v. Padin–Torres*, 988 F.2d 280, 284 (1st Cir.1993). The district judge and the plea agreement each warned Gonzalez that he was subject to a fine of up to $250,000. Although ordered to pay restitution in the amount of $17,273.03, he was not subjected to *any* fine. Thus, his actual financial burden at sentencing was far less than the potential penalty of which he was warned. Even if the court had erred by not informing him of the prospect of a restitution order, such error was harmless and did not violate Rule 11.

### B. Evidentiary Hearing

■ Gonzalez also protests the district court's failure to hold an evidentiary hear-

---

5. We emphasize that we are declining to pass judgment on whether or not Rule 11 could *ever* require a sentencing judge to inform a criminal defendant of his plea's immigration consequences. Certainly, the Rule's ends are best served when a defendant is made aware of all potential costs and benefits. We recognize, too, that even "collateral" immigration consequences will sometimes exert a greater impact on the defendant's life than will the criminal sanction imposed. Thus, in *Nunez Cordero*, we approvingly noted that we could "readily imagine" a court being willing to grant a defendant leave to withdraw his plea

in circumstances similar to Gonzalez's. 533 F.2d at 726. But we reject now—as we did then—the proposition that such a grant is *required.* Where the defendant has failed to elaborate the bases for overturning our precedents, and where—contrary to Gonzalez's assertions—the immigration consequences complained of remain subject to the discretion of entities other than the district court, we cannot find that the district judge's failure to advise him "affect[ed] substantial rights" any more so than did the judicial errors addressed in the cases cited above.

ing at which he could press his Motion to Withdraw Plea—an evidentiary hearing that we note Gonzalez never requested.[6] It is axiomatic that a defendant is not entitled to an evidentiary hearing on every motion he chooses to file. *See Isom,* 85 F.3d at 838; *United States v. Staula,* 80 F.3d 596, 603 (1st Cir.1996); *United States v. Lilly,* 983 F.2d 300, 310 (1st Cir.1992). An evidentiary hearing on a Rule 32(e) motion is only required when a defendant alleges facts which, if taken as true, would entitle him to relief. *See United States v. Crooker,* 729 F.2d 889, 890 (1st Cir.1984); *United States v. Fournier,* 594 F.2d 276, 279 (1st Cir.1979). Because we have held above that Gonzalez has failed to allege any such facts, we find that the district court did not abuse its discretion in denying his Motion to Withdraw Plea without holding an evidentiary hearing.

## III.

### *Conclusion*

For the foregoing reasons, the district court's decision to deny Gonzalez's Motion to Withdraw Plea is affirmed.

*Affirmed.*

---

**6.** Gonzalez now claims that he inferentially requested such a hearing in his Motion to Withdraw Plea by citing a case in which one was held. However, no direct request was ever made to the district court.