WILLIAMS, Circuit Judge,
dissenting.
At the time Roselva Chaidez, a lawful permanent resident since 1977, entered her plea, prevailing professional norms placed a duty on counsel to advise clients of the removal consequences of a decision to enter a plea of guilty. I would join the Third Circuit in finding that Padilla v. Kentucky, — U.S. -, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), simply clarified that a violation of these norms amounts to deficient performance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See United States v. Orocio, 645 F.3d 630 (3d Cir.2011). As such, Padilla did not announce a “new rule” under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and is therefore retroactively applicable to Chaidez’s coram nobis petition seeking to vacate her guilty plea on the grounds that her counsel was ineffective. For the reasons set forth below, I dissent.
I do not disagree that Teague holds that a “case announces a new rule when it breaks new ground or imposes a new obligation on the States or Federal Government,” and “if the result was not dictated by precedent existing at the time the [petitioner’s] conviction became final.” Teague, 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original). I do, however, disagree with the majority as to how Teague’s holding applies in the context of Strickland v. Washington.
In Padilla, the Court found that because “deportation is a particularly severe ‘penalty’, ... advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel.” 130 S.Ct. at 1478. The Court then stated that the first inquiry under Strickland, whether counsel’s representation “fell be *695 low an objective standard of reasonableness,” Strickland, 466 U.S. at 688, 104 S.Ct. 2052, is “necessarily linked to the practice and expectations of the legal community.” Padilla, 130 S.Ct. at 1482. Noting that Strickland’s standard looked to “reasonableness under prevailing professional norms,” the Padilla Court held that “[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation.” Id. (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052, and listing numerous guidelines and standards requiring advice on the deportation resulting from guilty pleas).
By citing and relying on Strickland, and applying that case to Padilla’s claim, the Court “broke no new ground in holding the duty to consult also extended to counsel’s obligation to advise the defendant of the immigration consequences of a guilty plea.” United States v. Orocio, 645 F.3d at 639 (internal quotations omitted). The decision “is best read as merely recognizing that a plea agreement’s immigration consequences constitute the sort of information an alien defendant needs in making ‘important decisions’ affecting ‘the outcome of the plea process,’ and thereby come within the ambit of the ‘more particular duties to consult with the defendant’ required of effective counsel.” Id. at 638 (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052). Under such a reading, Padilla was a mere application of Strickland to the facts before the Court, and therefore not a “new rule.”
Following Teague, the early Supreme Court retroactivity cases cast the “new rule” inquiry as whether or not “reasonable jurists” would agree that a rule was not “dictated” by precedent. See, e.g., Butler v. McKellar, 494 U.S. 407, 414, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990) (“The ‘new rule’ principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions.”); see also Sawyer v. Smith, 497 U.S. 227, 234, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). But this narrow conception of the “dictated” language from Teague is not the relevant inquiry in the Strickland context. “The often repeated language that Teague endorses ‘reasonable, good-faith interpretations’ by state courts is an explanation of policy, not a statement of law.” Williams v. Taylor, 529 U.S. 362, 383, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality) (quoting Butler, 494 U.S. at 414, 110 S.Ct. 1212). As the Court has stated, and as the majority today recognizes, “the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims,” id. at 391, 120 S.Ct. 1495 (opinion of the Court) (emphasis added). “[W]here the starting point is a rule of general application such as Strickland, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent,” Wright v. West, 505 U.S. 277, 308-09, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring). Given this clear language regarding Teague’s applicability in the Strickland context, I cannot find that the Supreme Court’s retroactivity cases where Strickland is not implicated compel a finding that the rule announced in Padilla is “new.”
In Williams, the Court was addressing Strickland under the “clearly established law” requirement of 28 U.S.C. § 2254(d)(1), which a plurality found codified Teague’s requirement that federal habeas courts must deny relief that is contingent upon a rule of law not “clearly established” at the time the state conviction became final. 529 U.S. at 379-80, 120 S.Ct. 1495. Parts I, III, and IV of the opinion were on behalf of a majority. The opinion of the Court stated:
*696 It is past question that the rule set forth in Strickland qualifies as “clearly established Federal law, as determined by the Supreme Court of the United States.” That the Strickland test “of necessity requires a case-by-case examination of the evidence,” Wright, 505 U.S., at 308, 112 S.Ct. 2482 (Kennedy, J., concurring in judgment), obviates neither the clarity of the rule nor the extent to which the rule must be seen as “established” by this Court. This Court’s precedent “dictated” that the Virginia Supreme Court apply the Strickland test at the time that court entertained Williams’ ineffective-assistance claim.... And it can hardly be said that recognizing the right to effective counsel “breaks new ground or imposes a new obligation on the States.”
529 U.S. at 391, 120 S.Ct. 1495 (internal citations omitted). Where such a “case-by-case examination” is required, “we can tolerate a number of specific applications without saying that those applications themselves create a new rule.” Wright, 505 U.S. at 308-09, 112 S.Ct. 2482 (Kennedy, J., concurring).
This case is one of those “specific applications” that does not create a new rule. In applying Strickland to this particular set of facts, the Court found that prevailing professional norms in place at the time of the defendant’s plea required counsel to act in accordance with those norms, and that the advice required was clear and apparent. Padilla, 130 S.Ct. at 1482 (“The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation .... Padilla’s counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute....”); see also Osagiede v. United States, 543 F.3d 399, 409 (7th Cir.2008) (finding Strickland violation for failure to comply with Article 36 of the Vienna Convention where “[t]he law was on the books; the violation was clear. Simple computer research would have turned it up”). That the Padilla Court began by addressing whether Strickland applied to Padilla’s claim is of no consequence. As the Third Circuit recognized, the true question addressed by Padilla is whether counsel has been constitutionally adequate in advising a criminal defendant as to whether or not to accept a plea bargain. Orocio, 645 F.3d at 637-38. The analytical mechanism by which the Court applied Strickland does not detract from the fact that Strickland is the general test governing ineffective assistance claims, and that the Padilla Court did no more than recognize that removal is the type of consequence that a defendant needs to be informed of when making the decision of whether to plea.
Given how Teague and Strickland coexist, I would not find that the concurring and dissenting views in Padilla compel a finding that the majority’s opinion is a “new rule.” Despite using dissenting views to inform the analysis of whether reasonable jurists could differ on whether precedent dictates a particular result, the Court has “not suggested] that the mere existence of a dissent suffices to show that the rule is new.” Beard v. Banks, 542 U.S. 406, 416 n. 5, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004). And where the Court has relied on an “array of views” to find a rule “new,” the underlying case that the petitioner sought to have applied in fact had no majority opinion. See, e.g., O’Dell v. Netherland, 521 U.S. 151, 159, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (discussing Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality opinion), and finding that “Simmons is an unlikely candidate for ‘old-rule’ status. As noted above, there was no opinion for the Court.”). The existence of concurring and dissenting views does not alter the fact that the prevailing profes *697 sional norms at the time of Chaidez’s plea required a lawyer to advise her client of the immigration consequences of a guilty plea. Even in light of dissenting views, “Strickland did not freeze into place the objective standards of attorney performance prevailing in 1984, never to change again.” Orocio, 645 F.3d at 640. The concurring and dissenting opinions do not alter the straightforward application of Strickland that the majority engaged in. In Padilla, even the concurring Justices agreed that counsel must, at the very least, advise a noncitizen “defendant that a criminal conviction may have adverse immigration consequences.” Padilla, 130 S.Ct. at 1487 (Alito, J., concurring). And Justices have disagreed on whether an outcome was “dictated” by precedent where a majority found that a novel application of an old precedent was not a “new rule.” See, e.g., Stringer v. Black, 503 U.S. 222, 237, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (holding that cases invalidating use of vague aggravating factors in capital sentencing applied to Mississippi’s capital sentencing law despite the fact that Mississippi used a different method of weighing aggravating and mitigating factors, and was therefore not a “new rule,” with three Justices dissenting).
The strongest argument that the government and majority opinion make is the unanimity among the lower courts prior to Padilla that the Sixth Amendment does not require counsel to warn clients of the immigration consequences of a guilty plea. The early cases, however, relied on the categorization of removal or deportation as a “collateral” consequence. See United States v. Santelises, 476 F.2d 787 (2d Cir. 1973); United States v. Campbell, 778 F.2d 764 (11th Cir.1985); United States v. Quin, 836 F.2d 654 (1st Cir.1988); United States v. Yearwood, 863 F.2d 6 (4th Cir. 1988); United States v. George, 869 F.2d 333 (7th Cir.1989); United States v. Del Rosario, 902 F.2d 55 (D.C.Cir.1990); United States v. Banda, 1 F.3d 354 (5th Cir.1993). This is a classification that the Padilla court specifically rejected. Padilla, 130 S.Ct. at 1482 (finding that “because of its close connection to the criminal process,” removal is “uniquely difficult to classify as either a direct or collateral consequence”). The Court found that deportation is “intimately related to the criminal process,” and that “[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century.” Id. at 1481. The Court also found that “recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders.” Id. The Court therefore found it “ ‘most difficult’ to divorce the penalty from the conviction in the deportation context.” Id. (citations omitted).
Despite the drastically changed immigration landscape following the passage of IIRIRA in 1996, more recent lower court decisions did not revisit earlier holdings regarding deportation’s collateral nature, and declined to find deportation any less collateral. See United States v. Gonzalez, 202 F.3d 20 (1st Cir.2000) (reaffirming Quin, 836 F.2d 654 and stating that “Gonzalez has failed to persuade us that our precedents regarding the collateral nature of deportation require visitation”); United States v. Fry, 322 F.3d 1198 (9th Cir.2003); Broomes v. Ashcroft, 358 F.3d 1251 (10th Cir.2004); Santos-Sanchez v. United States, 548 F.3d 327 (5th Cir.2008). These cases, however, cannot change the fact that the Supreme Court itself “never applied a distinction between direct and collateral consequences to define the scope of constitutionally ‘reasonable professional assistance’ required under Strickland ...,” Padilla, 130 S.Ct. at 1481 (citations omitted), a more relevant inquiry for Teague purposes. Not only did the Supreme Court never make this distinction, but in 2001 the Court stated that “preserving the *698 client’s right to remain in the United States may be more important to the client than any potential jail sentence.” INS v. St. Cyr, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The flaw in the collateral versus direct consequences distinction was known at the time of Chaidez’s plea. See Chin & Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L.Rev. 697, 699, 703 (2002) (“The collateral consequences rule is remarkable because it has apparently been embraced by every jurisdiction that has considered it, yet it is inconsistent with the ABA standards and the practices of good lawyers as described by the Supreme Court and other authoritative sources.”). And as the majority recognizes, “the mere existence of conflicting authority does not necessarily mean a rule is new.” Williams, 529 U.S. at 410, 120 S.Ct. 1495 (quoting Wright, 505 U.S. at 304, 112 S.Ct. 2482 (1992) (O’Connor, J., concurring)). The only question for Teague purposes in the Strickland context is whether counsel was constitutionally adequate in advising a criminal defendant as to whether or not to accept a plea bargain. Orocio, 645 F.3d at 637-38. Relying on lower court decisions to the contrary would overlook Strickland’s straightforward language that “[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms” — professional norms that the Padilla Court found had been in place for at least fifteen years prior to its holding. Padilla, 130 S.Ct. at 1482-83 (listing guidelines and standards that constitute the “weight of prevailing professional norms”). I would therefore not find the unanimity among the lower courts predating Padilla “compelling” for purposes of our current Teague analysis.
My colleagues downplay the plain language in Padilla that itself signals anticipated retroactive application. The majority in Padilla specifically stated that its decision will not “open the floodgates” to challenges of convictions and further stated that “[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains.” Padilla, 130 S.Ct. at 1485 (emphasis added). This floodgates argument is a clear reference to petitions such as the one at hand that challenge the past deficient performance of counsel. The Court’s use of the past tense in Padilla forecloses an argument that it was only referring to prospective challenges, especially when the two subsequent sentences of the opinion speak of professional norms over the “past 15 years” and that courts should presume that counsel satisfied their obligation “at the time their clients considered pleading guilty.” Id. (emphasis added) (“For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client’s plea.... We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty.”) (internal citations omitted); see also Orocio, 645 F.3d at 641 (“Indeed, close scrutiny of the Padilla opinion leads us to consider it not unlikely that the Padilla Court anticipated the retroactive application of its holding on collateral review when it considered the effect of its decision would have on final convictions .... ”). Such a discussion would be unnecessary if the Court intended that Padilla only apply prospectively. The government argues that the floodgates discussion referred only to state post-conviction proceedings, as states are free to offer post-conviction relief without regard to Teague. See Danforth v. Minnesota, 552 U.S. 264, 280-81, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008). However, in its floodgates discussion, the Padilla Court relied on research that included both state and *699 federal post conviction proceedings when citing how many habeas petitions filed arise from guilty pleas. Padilla, 130 S.Ct. at 1485 (citing V. Flango, National Center for State Courts, Habeas Corpus in State and Federal Courts 36-38 (1994)).
As the Court in Padilla signaled, if mere applications of Strickland are “old rules,” it does not necessarily follow that every petitioner will be able to take advantage of those mere applications. First, the Padilla Court relied on the professional norms in place at the time of plea, and the fact that Padilla’s counsel “could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute____” Padilla, 130 S.Ct. at 1482. Not every noncitizen who pled to an offense will be in that position. Id. at 1483 (“There will ... undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain.”) Additionally, Strickland also requires a showing of prejudice. Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (asking whether “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different”). Showing prejudice, much like deficient performance, is adjudicated depending on the facts of each particular case, Padilla, 130 S.Ct. at 1485 (“... to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances”), and the fact that courts must engage in such case-by-case analysis should not influence whether or not the rule itself is “new.” Id. (“There is no reason to doubt that lower courts — now quite experienced with applying Strickland — can effectively and efficiently use its framework to separate specious claims from those with substantial merit.”).
We can rest assured that defense lawyers will now advise their clients prior to pleading guilty about the immigration consequences of such a plea, as the Court has clarified that such advice is required under the Sixth Amendment. But given today’s holding, this is of no consequence to Roselva Chaidez despite the fact that professional norms in place at the time of her plea placed the same duty on her counsel. Because I find that Padilla simply extended the Supreme Court’s holding in Strickland, and itself signaled an intent to be applied to noncitizens in Chaidez’s position, I respectfully dissent.