DECISION
Before this Court is the application of Roberto Brito-Batista ("Brito-Batista" or "petitioner") for post-conviction relief. Brito-Batista contends that he was denied his right to effective assistance of counsel prior to entering a plea of nolo contendere to one count of simple possession of cocaine. This plea, entered in 1997, now carries the potential of deportation for Brito-Batista. The Court is mindful that immigration generally and deportation specifically is today, as it has been periodically throughout our nation's history, a highly publicized, impassioned, and divisive topic. Long before the horrific and tragic events of September 11, 2001 challenged our nation to reexamine its role in an increasingly interdependent world, the government's authority to exclude specified individuals from our nation was recognized as an extreme sanction. In the midst of the Cold War, Justice Douglas, with Justice Black concurring, wrote:
 Banishment is punishment in the practical sense. It may deprive a man and his family of all that makes life worth while. Those who have their roots here have an important stake in this country. Their plans for themselves and their hopes for their children all depend on their right to stay. If they are uprooted and sent to lands no longer known to them, no longer hospitable, they become displaced, homeless people condemned to bitterness and despair. Harisiades v. Shaughnessy, 342 U.S. 580, 600
(1952) (Douglas, J., dissenting). *Page 2 
With this understanding, the Court proceeds to consider Brito-Batista's motion to vacate his plea pursuant to G.L. 1956 § 10-9.1-1.[1] The State of Rhode Island ("State") moves to dismiss the petitioner's application.
 I Facts and Travel
On August 25, 1997, Brito-Batista appeared before a justice of the Superior Court and entered a nolo contendere plea to a single charge of simple possession. (Plea Hr'g Tr. [hereinafter Plea Tr.] 7.) The petitioner was accompanied by his attorney and a court interpreter. (Plea Tr. 1.) The hearing justice sentenced Brito-Batista to eighteen months probation. (Plea Tr. 7.) There is no claim that the petitioner failed to satisfy the requirements of his sentence. On July 12, 2004, having retained different counsel, the petitioner submitted an application for post-conviction relief. At the time, the petitioner contended that his plea was entered in violation of G.L. 1956 § 12-12-22, which requires that non-citizen defendants be informed of potential immigration consequences of a guilty or nolo contendere plea. Some time in the years since Brito-Batista's nolo contendere plea, the federal government instituted removal proceedings against him based on that plea.[2]
The State consistently has objected to the petitioner's application. On August 2, 2004, the State moved that the Court dismiss the petitioner's application pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. (State's Mot. to Dismiss *Page 3 
Applications for Post-Conviction Relief 1.) In its written motion and during oral arguments, the State properly contended that § 12-12-22 did not apply to Brito-Batista's plea. Id. 1-2. The State accurately noted that the provision of § 12-12-22 which enforces the obligation that a defendant be informed of the potential immigration consequences of a plea was not effective until several years after Brito-Batista entered his plea in 1997. Id. 1. In addition, the State argued that "absent a specific statutory or constitutional provision . . . judges are charged with informing defendants only of the direct consequences of a plea. . . . The possibility of deportation, however, is a collateral plea."Id. 2 (citation omitted).
After considering the parties' arguments, on September 16, 2004, this Court issued a bench decision in which it denied the petitioner's application. (Post-Conviction Relief Hr'g Tr. [hereinafterPost-Conviction Tr.] 17.) The Court found that § 12-12-22 did not apply to Brito-Batista when he entered his plea. Id. 14-17. However, the Court did not decide whether immigration consequences are direct or collateral consequences of a plea or, if they are collateral, whether a hearing justice must inform a defendant of the collateral consequences that may result from a plea prior to accepting that plea. Id.
On September 24, 2004, Brito-Batista, now represented by another attorney, moved the Court to amend judgment pursuant to Rule 59(e) of the Superior Court Rules of Civil Procedure or, in the alternative, to provide the petitioner with relief from judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. This motion is presently before the Court.[3] The petitioner first contends that this Court has *Page 4 
discretion to vacate the plea in light of the fact that he was not informed of the potential immigration consequences of the plea prior to entering it. (Mem. of Law in Supp. of Defs.' Post-ConvictionApplication [hereinafter Petitioner's Mem.] 2.) Secondly, the petitioner argues that his Sixth Amendment right to effective assistance of counsel was violated prior to entering his plea by his trial counsel's failure to inquire about his immigration status, investigate potential immigration consequences stemming from his plea, and advise him accordingly. (Id. 6.)
During oral arguments that were heard on April 30, 2008, the State opposed the petitioner's application. First, the State countered by arguing that at the time of Brito-Batista's plea there did not exist a statutory obligation to advise defendants of the potential immigration consequences of a plea prior to entering a plea. Second, the State argued that Brito-Batista's attorney failed to advise him of the potential immigration consequences of entering a nolo contendere plea did not violate the petitioner's right to effective assistance of counsel because deportation is a collateral consequence of that plea. Third, the State argued that vacating a plea that was entered in 1997 would prejudice the State because of the practical difficulty associated with retrying Brito-Batista. *Page 5 
 II Collateral Consequences Doctrine
The State correctly argues that deportation is a collateral consequence of a plea. Tavarez v. State, 826 A.2d 941, 944 (R.I. 2003);see U.S. v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000) ("deportation is only a collateral concomitant to criminal conviction"). "The possibility of deportation . . . is a collateral consequence because it is a consequence controlled by another agency beyond the authority of the trial justice." Tavarez, 826 A.2d at 944.
However, Brito-Batista does not argue that the trial justice who accepted his plea or his defense attorney violated his right to due process by failing to inform him of the potential immigration consequences of his plea. The Rhode Island Supreme Court and the First Circuit Court of Appeals have determined that neither their respective rules of criminal procedure nor the Due Process Clause of the federal constitution impose an obligation on justices or attorneys to inform defendants of the collateral consequences of a plea. Gonzalez,202 F.3d at 24; Tavarez, 826 A.2d at 943. In Tavarez, "[t]he applicant . . . argued that this discussion [prior to entering his plea] did not satisfy Rule 11 of the Superior Court Rules of Criminal Procedure." The Rhode Island Supreme Court held that "the trial justice had no obligation to inform Tavarez of possible immigration consequences," thus the plea was properly entered in spite of the fact that the trial justice did not inform the defendant of those consequences. Id. Similarly, the First Circuit Court of Appeals "turn[ed] to . . . the question whether in light of these claims, his plea was `knowing, intelligent and voluntary,'" the requirements imposed by Rule 11 of the Federal Rules of Criminal Procedure. Gonzalez, 202 F.2d at 24. The First Circuit held *Page 6 
that "Counsel's failure to advise a defendant of a collateral consequence is a legally insufficient ground for a plea withdrawal."Id. at 25.
This Court is mindful of the important distinction between two constitutional guarantees implicated by a plea: the Fifth Amendment right to due process, applicable to the states through theFourteenth Amendment, and the Sixth Amendment right to counsel. It has long been recognized that Rule 11 of the Superior Court Rules of Criminal Procedure "reflects . . . the requirements of due process under theFourteenth Amendment." Reporter's Notes to Rule 11; State v.Williams, 122 R.I. 32, 404 A.2d 814, 818 (R.I. 1979) (noting that the state's Rule 11 codified previously adopted due process protections). Likewise, the United States Supreme Court held that Rule 11 of the Federal Rules of Criminal Procedure implicates the Due Process Clause of the Fifth Amendment, applicable to the states through theFourteenth Amendment. Boykin v. Alabama, 395 U.S. 238, 243 n. 5 (1969) (citingJohnson v. Zerbst, 304 U.S. 458, 464 (1938)).
It merits repeating that the petitioner does not claim that he suffered a violation of his right to due process. Instead, the petitioner argues that his defense attorney was obligated by theSixth Amendment's guarantee of effective assistance of counsel to inquire about his immigration status and advise him accordingly. Because each constitutional guarantee may stand or fall irrespective of other guarantees, the Court must address the petitioner's Sixth Amendment claim without regard to the requirements imposed by the Fifth andFourteenth Amendments. Soldal v. Cook County, 506 U.S. 56, 70 (1992) ("[W]e are not in the habit of identifying as a preliminary matter the claim's `dominant' character. Rather, we examine each constitutional provision in turn."); Lyons *Page 7 v. Pearce, 694 P.2d 969, 971 (Or. 1985) (distinguishing between "whether petitioner's guilty plea was knowing and voluntary, and whether petitioner was denied effective assistance of counsel").
 III Ineffective Assistance of Counsel Claim A Constitutional Standard
Rhode Island's post-conviction relief statute provides a well-developed avenue of relief for any person convicted of a crime who claims "[t]hat the conviction . . . was in violation of the constitution of the United States or the constitution or laws of this state." Section 10-9.1-1(a)(1). "An application may be filed at any time." G.L. 1956 § 10-9.1-3.
Claims of ineffective assistance of counsel originate in the Counsel Clause of the United States Constitution's Sixth Amendment and in Article I, section 10 of the Rhode Island Constitution. Addressing an ugly moment in our nation's history — the case of the so-called Scottsboro Boys, nine black males charged with raping two white females — Justice George Sutherland and a United States Supreme Court that included such distinguished jurists as Louis Brandeis, Harlan Fiske Stone, and Benjamin Cardozo, announced that the right to counsel requires more than mere pro forma representation; rather, the right encompasses "effective and substantial aid." Powell v. Alabama,287 U.S. 45, 53 (1932); see Joel Francis Paschal, Mr. Justice Sutherland: A ManAgainst the State 214-16 (1951). In another case decided in an era very different from our own, the United States Supreme Court in 1940 described the right to counsel as a "sacred" *Page 8 
component of the nation's judicial procedures. Avery v. Alabama,308 U.S. 444, 447 (1940). Thirty years later the nation's highest court explicitly "recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759,771 n. 14 (1970).
Our own Supreme Court held this principle so self-evident that it unequivocally explained, "[w]ith regard to the question of effective counsel, no citation of authority is needed to support the principle that under our state and federal constitutions, an indigent defendant is entitled to effective assistance of counsel and to a fair trial."State v. Desroches, 110 R.I. 497, 293 A.2d 913, 915 (1972). In a subsequent case the Rhode Island Supreme Court clarified "that for constitutional purposes, no distinction may be drawn between defendants represented by private counsel and those with court-appointed counsel."State v. Gonsalves, 476 A.2d 108, 113 (R.I. 1984) (citing Cuyler v.Sullivan, 466 U.S. 335, 344 (1980)). Importantly, "`[e]ffective' [representation] does not mean successful. It means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him." State v. D'Alo, 477 A.2d 89, 91
(R.I. 1984) (quoting Desroches, 293 A.2d at 916).
Forty years after the McMann Court explicitly articulated theSixth Amendment's guarantee of effective assistance of counsel, the United States Supreme Court announced the benchmark against which all claims of ineffective assistance of counsel are to be considered. Strickland v.Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court explained that the purpose of the constitutional requirement of effective assistance is "to ensure a fair trial." Id. at 686. This purpose, the Court added, imposes on counsel *Page 9 
"the overarching duty to advocate the defendant's cause and the more particular dut[y] to consult with the defendant on important decisions. . . ." Id. at 688.
A "defendant [who] complains of the ineffectiveness of counsel's assistance . . . must show that counsel's representation fell below an objective standard of reasonableness." Id. To show that counsel failed to meet this objective standard of reasonableness, theStrickland Court issued a two-pronged standard that requires the petitioner to show that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. Id. at 687. As the Court explained,
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
In addition to the two-pronged test, "counsel is strongly presumed to have rendered adequate assistance." Id. at 690.
To satisfy the deficiency prong, Brito-Batista "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."Id. at 690. Although the Strickland Court declined to delineate a "set of detailed rules for counsel's conduct," it did note that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable. . . ."Id. at 688; see U.S. v. Blaylock, 20 F.3d 1458, *Page 10 
1466 (9th Cir. 1994) (stating, "under the Strickland test, a court deciding whether an attorney's performance fell below reasonable professional standards can look to the ABA standards for guidance.")
The Strickland condemnation of an attorney's unreasonable actions or omissions must be distinguished from tactical decisions made as part of counsel's trial strategy. As our state's Supreme Court explained, "mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel." Toole v. State, 748 A.2d 806, 809
(R.I. 2000). "[A] court must distinguish between tactical errors made as a result of ignorance and neglect and those arising from careful and professional deliberation. . . . `Thus, a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard.'" D'Alo, 477 A.2d at 92 (quoting United States v.Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)).
If the petitioner satisfies the deficiency prong, he must then address the prejudice requirement identified by the Strickland Court.466 U.S. at 687. To satisfy the prejudice prong, "`[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brown v. Moran, 534 A.2d 180, 182 (R.I. 1987) (quoting Strickland, 466 U.S. at 694). The Rhode Island Supreme Court recently affirmed this standard in Larngar v. Wall, explaining that "`prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different.'" 918 A.2d 850, 856 (R.I. 2007) (quotingState v. Figueroa, 639 A.2d 495, 500 *Page 11 
(R.I. 1994)). Moreover, the United States Supreme Court addressed the prejudice standard in a post-conviction relief case presenting an ineffective assistance of counsel claim arising out of the plea process.Hill v. Lockhart, 474 U.S. 52, 57 (1985). In that case, the Court explained, "The second, or `prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59 (emphasis added).
Since its initial application of the Strickland line of analysis in November 1984, exactly six months after Strickland was decided, the Rhode Island Supreme Court has repeatedly endorsed and explained theStrickland standard. See, e.g., Heath v. Vose, 747 A.2d 475, 478 (R.I. 2000) (explicitly stating that Rhode Island has adopted theStrickland standard); Barboza v. State, 484 A.2d 881, 883 (R.I. 1984) (recognizing for the first time the Strickland standard). Recently, our Supreme Court stated that it "will reject an allegation of ineffective assistance of counsel `unless the attorney's representation [was] so lacking that the trial has become a farce and a mockery of justice.'"Moniz v. State, 933 A.2d 691, 696 (R.I. 2007) (quoting State v.Dunn, 726 A.2d 1142, 1146 n. 4 (R.I. 1999) (alteration in original)). "`The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Heath, 747 A.2d at 478 (quotingStrickland, 466 U.S. at 686). Moreover, the court must *Page 12 
make this determination "based on the totality of the omissions [allegedly] committed" by the petitioner's attorney. Heath,747 A.2d at 478.
The standard set forth in Strickland has rightly been characterized as "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). Nonetheless, the Strickland standard is "by no means insurmountable."Id.
 B Analysis
The Court must therefore consider the petitioner's claim that his right to effective assistance of counsel was violated in light of the extensive explications provided by our Supreme Court and the federal courts. The petitioner claims that his trial counsel's failure to inquire about his immigration status, investigate potential immigration consequences stemming from his plea, and advise him accordingly constitutes ineffective assistance of counsel. The Court is cognizant that many courts, including the Rhode Island Supreme Court, have addressed post-conviction relief claims of ineffective assistance of counsel based on counsel's alleged failure to inform an accused of the potential immigration consequences of a plea prior to entering that plea. See, e.g., U.S. v. Gonzalez, 202 F.3d 20, 24 (1st Cir. 2000);Ducally v. State, 809 A.2d 472, 475-76 (R.I. 2002); State v. Alejo,655 A.2d 692, 693 (R.I. 1995); State v. Figueroa, 639 A.2d 495, 500 (R.I. 1994). Many of these cases, reviewed at length by this Court, are inapposite to the matter presented by Brito-Batista either because they do not directly address the Sixth Amendment right to effective assistance or because they were decided in a substantially different procedural posture than the matter before this Court. *Page 13 
 1 Inapposite Cases Referenced by the Parties
The State correctly asserted that our Supreme Court inDucally considered a claim that factually and procedurally resembles Brito-Batista's claim. 809 A.2d at 473. The petitioner in that case "asserted that he had received ineffective assistance of counsel when he entered his nolo contendere pleas because he was not informed that said pleas could result in his deportation from the United States."Id. The Court found
 that [the petitioner's] rights were clearly explained to him both by his attorney and by the trial justice before he entered his pleas of nolo contendere. He indicated that he fully understood both his rights and the consequences of his pleas, including the fact that he [could not] later `change his mind.' Id. at 475.
Though the Ducally petitioner's claim was presented as one of aSixth Amendment right to effective assistance of counsel, the Supreme Court's analysis of the constitutional questions presented suggests that it considered Ducally's claim under the Due Process Clause of theFifth Amendment. The Ducally Court expressly noted the standard that it addressed: "[t]he defendant's burden to prove that he or she did not waive his or her rights in an intelligent and understandable manner is by a preponderance of the evidence." Id (citing State v. Eason,786 A.2d 365, 367 (R.I. 2001)). It is the Fifth Amendment's Due Process Clause, applicable to the states through the Fourteenth Amendment, which requires that an accused understand the nature and consequences of a plea prior to entering it. Boykin, 395 U.S. at 243. Indeed, the case cited for support by the Ducally Court, State v. Eason, was itself a case in which an accused claimed that his plea "was not knowing, voluntary, and intelligent," the requirements imposed by the Due *Page 14 
Process Clause. Eason, 786 A.2d at 367. Our state Supreme Court's reliance on the Due Process Clause renders its constitutional analysis inapposite to Brito-Batista's claim.
Another case relied upon by the State, State v. Desir, likewise presents a distinct issue from that presented by Brito-Batista.766 A.2d 374, 375 (R.I. 2001). In that case, the petitioner offered two arguments, only one of which possibly could be considered relevant to the matter presently before this Court. "Desir contended that his plea was involuntary, unintelligently made, and invalid because neither the trial justice nor his attorney explained the potential deportation consequences that might result from his conviction." Id. As the highest courts of our state and nation have explained, it is the Due Process Clause of the Fifth Amendment, enforced on the states through theFourteenth Amendment, which demands that a plea be entered knowingly, voluntarily, and intelligently. Boykin, 395 U.S. at 243;Eason, 786 A.2d at 367. Brito-Batista, on the other hand, presents aSixth Amendment claim.
Furthermore, Desir is of no consequence to Brito-Batista's claim because the Rhode Island Supreme Court limited its discussion to the duties of the trial justice who presided at the plea hearing. In explaining "that direct consequences of a plea . . . are the only consequences that need to be addressed with the defendant upon acceptance of a plea," the Court stated that "`deportation is a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice].'" 766 A.2d at 376 (quoting State v. Alejo, 655 A.2d 692, 692
(R.I. 1995)) (alterations in original). After quoting the text of § 12-12-22, the Court concluded its discussion of the defendant's voluntary and intelligent plea by announcing, "we will not place the onus upon the trial justice to explore every possible consequence of a plea in *Page 15 
order for the plea to be voluntary." 766 A.2d at 376-77. Clearly the Supreme Court's focus was on the duties imposed upon the trial justice, not the defense attorney, by the Due Process Clause and the Rhode Island statute. It is, after all, only the trial justice who has the authority to accept a plea. Id. at 376. Indeed, the Desir Court's quotation ofAlejo is enlightening insofar as it is in turn a quotation ofFigueroa, a case in which the Supreme Court disagreed with the petitioner's interpretation of § 12-12-22 "as creating a duty upon the court to advise alien defendants that pleas of guilty or nolo contendere may have immigration effects." Figueroa, 639 A.2d at 499.[4] The duties imposed or not by the Due Process Clause or a state statute are of no concern to this Court's application of the Sixth Amendment. Similarly, the duties imposed or not upon a justice presiding at a plea hearing are not relevant to this Court's determination of the duties imposed by the Sixth Amendment on the petitioner's defense attorney.
Moreover, the Desir Court's distinction between direct and collateral consequences is based on the scope of the trial justice's authority.766 A.2d at 376. The Court's failure to address Desir's contention that his attorney should have explained to him the potential consequences of his plea renders that decision wholly irrelevant to Brito-Batista's claim.
The last case referenced by the State during oral arguments,Tavarez v. State, is similarly inapposite. 826 A.2d 941, 942 (R.I. 2003). Unlike Brito-Batista, the petitioner in Tavarez "maintained that his nolo contendere plea could not be valid because he neither withdrew his original plea of not guilty nor requested the entry of a nolo contendere plea." Id. As the Supreme Court noted, the petitioner in that case argued that *Page 16 
his plea colloquy did not satisfy Rule 11 of the Superior Court Rules of Criminal Procedure. Id. at 943. Since Rule 11 implicates the Due Process Clause, it is of limited relevance to this Court's consideration of the petitioner's Sixth Amendment claim. State v. Williams, 122 R.I. 32,404 A.2d 814, 818 (R.I. 1979).
 2 Deficiency Prong
Brito-Batista argues that his counsel was obligated to advise him of the potential that he could be deported if he pled nolo contendere to simple possession. In his supporting memorandum, the petitioner posits, "[t]he obligation of defense counsel to advise about the deportation consequences of guilty pleas stems from three considerations: the general obligation of defense counsel to advise clients about consequences significant to their plea decisions; the relative ease with which deportation consequences can be ascertained by defense counsel; and the uniquely harsh nature of the deportation penalty."Petitioner's Mem. 6-7.
Under the Strickland analysis, this Court must determine whether the petitioner's defense counsel's failure to advise him about the potential that he could be deported constitutes deficient performance. "[A] petitioner is `entitled to reasonably competent assistance at each stage of the proceedings . . ., from pre-plea investigation and preparation through advocacy at sentencing.'" Sparfven v. United States,577 F. Supp. 1430, 1435 (D.R.I. 1984) (quoting U.S. v. Garcia, 698 F.2d 31,33-34 (1st Cir. 1983)). Importantly, the United States Supreme Court, inUnited States v. Cronic, found that "specific errors and omissions" can be the basis of an ineffective assistance claim. *Page 17 466 U.S. 648, 657 n. 20 (1984). Consequently, under the Strickland standard, an attorney's omission is to be analyzed identically as an attorney's erroneous action.
There can be no question that defense counsel has a "duty to investigate" the law and facts underlying a client's predicament.Rompilla v. Beard, 545 U.S. 374, 383 (2005). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland,466 U.S. at 691. The crucial concern presented by Brito-Batista, however, is not whether counsel had a duty to investigate, but whether counsel "conducted a thorough investigation of the defendant's background."Williams v. Taylor, 529 U.S. 362, 396 (2000). As the United States Supreme Court noted in Rompilla, "reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." 545 U.S. at 383.
On multiple occasions, the United States Supreme Court has explored the contours of Strickland's reasonableness requirement. InRompilla, the Supreme Court determined that "the [petitioner's] lawyers were deficient in failing to examine the court file on Rompilla's prior conviction. . . . Rompilla's counsel had a duty to make all reasonable efforts to learn what they could about the offense. Reasonable efforts certainly included obtaining the Commonwealth's own readily available file. . . ." Id. at 383, 385. Similarly, in Williams, the Supreme Court found counsel was deficient because counsel failed to investigate the defendant's life history. 529 U.S. at 395-96. The Court found that "trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background." Id. at 396. *Page 18 
Though Rompilla and Williams addressed factual circumstances that are different from those claimed by Brito-Batista, the Court nonetheless finds these cases instructive. In those cases, the United States Supreme Court found that counsels' failure to investigate pertinent information that was readily accessible by them with minimal effort was constitutionally defective assistance. This Court presently is confronted with a situation in which the petitioner claims that his defense counsel was constitutionally required to ask him about his immigration status. Such information was immediately available to Brito-Batista's attorney with virtually no additional effort. He simply could have asked Brito-Batista during any of their personal meetings prior to Brito-Batista's entry of a plea, up to and including Brito-Batista's plea hearing. This type of limited inquiry would have revealed pertinent information about Brito-Batista's background and, assuming he responded reasonably to the information solicited, would have given Brito-Batista's defense attorney the necessary "good reason to think further investigation would be a waste." Rompilla,545 U.S. at 383; Williams, 529 U.S. at 396. However, Brito-Batista's defense attorney failed to conduct a thorough investigation of his client's background, thus he advised Brito-Batista without being apprised of readily available information that was of enormous significance to his client's legal predicament. Williams, 529 U.S. at 396.
The Court is satisfied that Rompilla and Williams properly guide its determination of the petitioner's claim. However, the Court also recognizes that Brito-Batista's defense attorney failed to conform to the prevailing norms of practice that existed in 1997. InStrickland, the United States Supreme Court explicitly instructed that "[p]revailing norms of practice as reflected in American Bar Association standards and *Page 19 
the like . . . are guides to determining what is reasonable. . . ."466 U.S. at 688; Greiner v. Wells, 417 F.3d 305, 321 (2nd Cir. 2005) ("Norms of practice, reflected in national standards like the American Bar Association (ABA) Standards for Criminal Justice, are useful guides for evaluating reasonableness."). Though the Strickland Court added that such standards "are only guides," its emphasis of the ABA standards nonetheless clarified that members of the bar, as members of a largely self-regulating profession, are charged with keeping abreast of evolving professional norms so as to provide their clients with objectively reasonable representation "to ensure that the trial is fair."466 U.S. at 685, 688. In a recent case arising from deportation proceedings based on an earlier entered plea, the United States Supreme Court noted that even if a defendant is not already aware of potential immigration consequences, "competent defense counsel, following the advice of numerous practice guides, would have advised him concerning the [statutory] provision's importance." Immigration Naturalization Serv.v. St. Cyr, 533 U.S. 289, 323 n. 50 (2001).
Because this Court is not inclined to impose today's professional standards on those that existed at the time of Brito-Batista's plea, it has carefully reviewed the professional standards and practice guides publicly available in 1997.[5] The ABA Standards for Criminal Justice available then clearly stated that "[d]efense counsel should conclude a plea agreement only . . . after appropriate investigation." 3 ABA Standards for Criminal Justice § 14-3.2(a)-(b) (2d ed. 1986 supp.) [hereinafter ABA Standards]. The ABA Standards additionally instructed defense attorneys to "advise the defendant of the alternatives available and of considerations deemed important by defense counsel or *Page 20 
the defendant in reaching a decision." ABA Standards § 14-3.2(b). To illustrate some of the considerations that defense counsel or a defendant may deem important, the compilers specifically noted "deportation or expatriation." Commentary to ABA Standards § 14-3.2. Likewise, the author of a treatise on plea bargaining explained that among the considerations about which defense counsel should advise the defendant are "[a]ll of the consequences and ramifications of a particular plea, including possible sentences and effects on . . . immigration status. . . ." G. Nicholas Herman, Plea Bargaining § 3:03 (1997). Together, these materials indicate that the professional standards in circulation at the time of Brito-Batista's plea instructed defense attorneys to consider and discuss with their clients the possible immigration consequences of a plea. Brito-Batista's defense attorney's failure to do this rendered his representation below the "[p]revailing norms of practice" that this Court considers in determining what constitutes reasonable assistance.Strickland, 466 U.S. at 688.
The Supreme Court of Colorado's characterization of a claim before it aptly describes Brito-Batista's claim: "this case presents the question of whether an attorney's failure to research and investigate a particular body of law while representing a client rendered the attorney's assistance constitutionally ineffective." People v.Pozo, 746 P.2d 523, 527 (Colo. 1987). The Colorado Supreme Court explained, "[w]hether counsel adequately represented [the petitioner] in view of the lack of advice concerning possible deportation consequences depends initially on whether counsel had a duty to apprise himself of this aspect of immigration law." Id. Of course, counsel is not charged with clairvoyance. As the Colorado Supreme Court explained,
 [S]uch inquiry must include an initial determination of whether the body of law was relevant to the circumstances *Page 21 
of the client and the matters for which the attorney was retained. The inquiry must also include a determination of whether the attorney had reason to believe that the area of law in question was relevant to the client and the client's legal problems. Pozo, 746 P.2d at 527-28.
Counsel is charged with the "dut[y] to consult with the defendant on important decisions. . . ." Strickland, 466 U.S. at 688. According to the Rules of Professional Conduct promulgated by our Supreme Court in 1997, and obligatory for every member of our state's bar, "[p]erhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that transcends any particular specialized knowledge." Comment to Rule 1.1 of Article V of the Rules of Professional Conduct. This Court could not agree more strongly. The fundamental duty of every attorney is to ask questions designed to elicit information material to their client's legal predicament, including understanding the extent and nature of the client's particular quandary.
Returning to the persuasive explication offered by the Colorado Supreme Court, this Court agrees that "[t]he determination of whether the failure to investigate those consequences constitutes ineffective assistance of counsel turns to a significant degree upon whether the attorney had sufficient information to form a reasonable belief that the client was in fact an alien." Pozo, 746 P.2d at 529. Our Supreme Court, in the Fourth Amendment context, has defined "reasonable belief" as a belief that is "based upon `specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant'" that belief. State v. Milette, 727 A.2d 1236, 1240 (R.I. 1999) (internal citations omitted). In Ducally, for example, our Supreme Court found that the petitioner's defense attorney did not have any reason to believe that the petitioner *Page 22 
was not a citizen of this country "since the defendant himself was unaware of it." 809 A.2d at 476.
With that definition in mind, the Court turns to the record to determine whether Brito-Batista's defense attorney had specific and articulable facts upon which to form a reasonable belief that Brito-Batista was not a citizen of this country. The transcript of the plea hearing reflects that Brito-Batista was assisted at the hearing by a court interpreter who translated between English and Spanish. (Plea Tr. 1.) In addition, the Court specifically asked whether Brito-Batista read the plea form in Spanish. Id. 2. Though language is by no means synonymous with citizenship, Brito-Batista's apparent inability to comprehend the plea proceedings in English should have alerted his attorney to the fact that Brito-Batista's immigration status might be an important consideration for his client.[6]
The Court cautions that a defendant's inability to understand legal proceedings conducted in English should not be construed as a presumption that the defendant is not a citizen of this country. Rather, a defendant's ability to comprehend legal proceedings conducted in English is reflective of the complexity of those proceedings and the importance of ensuring that parties to legal proceedings fully understand them. As our Supreme Court stated in the context of a claim that a plea was entered in violation of Rule 11, "[a] defendant's ability to read and understand the English language does not invariably indicate that he will understand without further explanation the legal rights enumerated in the [plea] affidavit." State v. Feng,421 A.2d 1258, 1268 (R.I. 1980). *Page 23 
Though Brito-Batista's inability to comprehend the proceedings in English should not have led to a presumption of his citizenship status, it should have provided his defense attorney with sufficient facts to reasonably believe that further inquiry into Brito-Batista's immigration status was relevant. This duty to inquire does not arise "from a duty to advise specifically of deportation consequences, but rather from the more fundamental principle that attorneys must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients." Pozo, 746 P.2d at 529; see Michel v.United States, 507 F.2d 461, 465 (2nd Cir. 1974) ("[w]here his client is an alien, counsel and not the court has the obligation of advising him of his particular position as a consequence of his plea.").
Since Brito-Batista's defense attorney was obligated to investigate material legal principles that could significantly impact Brito-Batista, it defies logic to hold that his failure to provide any advice is constitutionally distinct from providing incorrect advice. "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." Johnson, 304 U.S. at 465. In other words, it is the duty of the attorney to initially consider the legal implications of a client's predicament, rather than a client's duty to bring these to the attention of the attorney. Since the defense attorney's failure to provide any advice to Brito-Batista left him in the exact position he would have been in had he relied on erroneous advice, this Court cannot contemplate how his attorney pierced the veil of ignorance that concerned the Johnson Court. Id.; see State v.Paredez, 101 P.3d 799, 805 (N.M. 2004) (explaining *Page 24 
that whether an attorney provided no advice or wrong advice "the consequence is the same: the defendant did not receive information sufficient to make an informed decision to plead guilty" and therefore the attorney failed to providence competent assistance).
The Supreme Court of New Mexico, considering a Sixth Amendment ineffectiveness claim separately from a Due Process Clause claim, agreed. Paredez, 101 P.3d at 804-05. "[N]ot requiring the attorney to specifically advise the defendant of the immigration consequences of pleading guilty would `place an affirmative duty to discern complex legal issues on a class of clients least able to handle that duty.'"Id. at 805 (quoting John J. Francis, Failure to Advise Non-Citizens ofImmigration Consequences of Criminal Convictions: Should This Be Groundsto Withdraw a Guilty Plea?, 36 U. Mich. J.L. Reform 691, 726 (2003)). Professor Francis described this predicament well:
 [C]lients rely on attorneys' expertise to spot and address legal issues that arise during representation. This logically includes consequences that flow from pleas. Insisting that the defendant spot legal issues for the attorney turns the attorney-client relationship on its head. This is particularly true for foreign-born defendants. Requiring a class of defendants, who may have the least amount of familiarity of all defendants with the American legal system, to identify legal issues on behalf of the professional on whom they are relying to do just that is an obfuscation of professional duty. Francis, Failure to Advise, 36 U. Mich. J.L. Reform at 726.
In light of the Johnson Court's explication that the purpose of the right to counsel is to protect an accused from his own ignorance, this Court cannot hold that the Sixth Amendment places the enormous burden of legal acuity on people untrained in the law. 304 U.S. at 465. *Page 25 
Though this duty is not contingent on the enormity of the legal problem facing a client, this Court would be remiss if it did not acknowledge, as several justices of the United States Supreme Court have done for well over a century, the gravity of deportation. As early as 1893, Justice Field surveyed Europe's history of deportation before concluding, "all the instances mentioned have been condemned for their barbarity and cruelty." Fong Yue Ting v. United States, 149 U.S. 698,757 (1893) (Field, J., dissenting). Almost thirty years later, Justice Brandeis, writing for a unanimous Supreme Court, explained that deportation may result in the loss of liberty, property, life, "or of all that makes life worth living." Ng Fung Ho v. White, 259 U.S. 276,284 (1922). A quarter-century after that, Justice Douglas, expressing the position of a unanimous Supreme Court, wrote, "[d]eportation can be the equivalent of banishment or exile." Delgadillo v. Carmichael,332 U.S. 388, 391 (1947). This Court would have to blind itself to the felt experience of law to avoid acknowledging this harsh reality, despite the fact that such acknowledgment does not control its determination.
For all of these reasons, the Court finds that the petitioner's plea was entered without the effective assistance of counsel. The Court now turns to the second prong of the Strickland test.
 3 Prejudice Prong
The petitioner posits that "had he been aware of the deportation consequences of the plea, he would have rejected the plea and insisted on going to trial." Petitioner's Mem. 22-23. In the alternative, the petitioner posits that "had [his defense] counsel *Page 26 
adequately researched the deportation consequences of the plea, an alternative plea might have been negotiated that would not have left the defendant deportable." Id. 23.
The state and federal courts have delineated detailed explanations ofStrickland's prejudice prong. To show that he was actually prejudiced, Brito-Batista "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brown v.Moran, 534 A.2d 180, 182 (R.I. 1987) (quoting Strickland,466 U.S. at 694). The Rhode Island Supreme Court reiterated this standard as recently as last year when it explained that "`prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different.'"Larngar v. Wall, 918 A.2d 850, 856 (R.I. 2007) (quoting State v.Figueroa, 639 A.2d 495, 500 (R.I. 1994)).
In a landmark decision addressing the prejudice requirement in the context of a petitioner's habeas corpus challenge to a plea, the United States Supreme Court clearly elucidated the proper standard guiding that Court. Hill, 474 U.S. at 57. Writing for the Court, Chief Justice William Rehnquist noted:
 [T]he second, or `prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the `prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Id. at 59 (emphasis added).
The First Circuit Court of Appeals subsequently endorsed this standard in the plea context. See U.S. v. Isom, 85 F.3d 831, 837 (1st Cir. 1996);U.S. v. Pellerito, 878 F.2d 1535, 1538 (1st Cir. 1989). InPellerito, the First Circuit explained that the prejudice *Page 27 
requirement demands that the petitioner show "that he `would not have pleaded guilty and would have insisted on going to trial' if not for counsel's shortcomings." 878 F.2d at 1538 (quoting Hill,474 U.S. at 59). Similarly, in Isom, the First Circuit held that the prejudice prong requires that the petitioner show "that `by such inadequate performance, Appellant was induced to enter guilty pleas which he otherwise would not have entered.'" 85 F.3d at 837 (quoting U.S. v. Austin, 948 F.2d 783,786 (1st Cir. 1991)). More recently, the United States District Court for the District of Massachusetts also embraced this standard, explaining "that a reasonable probability of a different result includes going to trial rather than pleading guilty." Ferrara v.United States, 384 F. Supp. 2d 384, 410 (D. Mass. 2005).
The Rhode Island Supreme Court has addressed the prejudice prong in light of Hill. In Figueroa, our Supreme Court began its discussion of the prejudice prong in a plea situation by essentially quotingHill: "the defendant must demonstrate a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." Figueroa, 639 A.2d at 500 (citingHill, 474 U.S. at 59). The Rhode Island Supreme Court has added another consideration: "[i]n addition, a defendant must show that the outcome of his or her case would have been different had he or she been aware of the likely deportation consequences of the guilty plea."Figueroa, 639 A.2d at 500 (citing Hill, 474 U.S. at 57). In applying this consideration to the case before it, our Supreme Court found that the petitioner failed to show the requisite prejudice because he did not provide any "evidence tending to show his innocence of the underlying weapons charge. . . . Therefore, it is most probable that a trial would have resulted in a conviction. . . ." Figueroa, 639 A.2d at 500-01. In effect, the Figueroa *Page 28 
Court narrowed the prejudice analysis from the Hill Court's "insiste[nce] on going to trial" to the petitioner's ability to provide "evidence tending to show his innocence." Hill, 474 U.S. at 59;Figueroa, 639 A.2d at 500.
In Hill, the Supreme Court determined that the prejudice prong is satisfied if the petitioner "show[s] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59. Given the severity of deportation, Brito-Batista's steadfast efforts to avoid deportation, his firm ties to the State of Rhode Island, and his affirmative statements indicating as such, this Court is convinced that the petitioner would not have entered a plea of nolo contendere and would have insisted on going to trial had he been informed of the potential immigration consequences of his plea. This Court concludes that the requirements set forth by the United States Supreme Court inHill and the Rhode Island Supreme Court in Figueroa are satisfied.
 IV Prejudice to the State
The State urges the Court to deny the petitioner's application for post-conviction relief notwithstanding the violation of Brito-Batista'sSixth Amendment right to effective assistance of counsel because the State would be prejudiced by the vacation of an eleven year old plea. During oral arguments, the State argued that it would be difficult to find witnesses and evidence with which to retry Brito-Batista.
The Court is cognizant that the defense of laches is available to the State in the post-conviction relief context. Raso v. Wall, 884 A.2d 391,394 (R.I. 2005). However, the State has not raised this defense; therefore, the Court will not impute this defense onto *Page 29 
the State's strategy. Additionally, even if the State had expressly raised the defense of laches, the Court notes that the State has not provided any evidence to satisfy its "burden of proving by a preponderance of the evidence that the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay."Id. at 395. "Whether or not there has been unreasonable delay and whether prejudice to the adverse party has been established are both questions of fact, and a determination must be made in light of the circumstances of the particular case." Id. at 396. Without evidence that would satisfy the State's burden, the Court cannot agree that the State will be prejudiced by correcting the constitutional wrong suffered by the petitioner.
 Conclusion
After reviewing the record, the Court finds that the petitioner's nolo contendere plea was entered in violation of his Sixth Amendment right to effective assistance of counsel. Accordingly, the petitioner's application for post-conviction relief is granted. Counsel shall submit an appropriate order for entry.
[1] As the trial justice has since retired from service to the Rhode Island Superior Court, this Court considers the matter pursuant to Rhode Island Superior Court Rules of Practice 2.3(d)(4).
[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) merged the proceedings for exclusion and deportation of non-citizens into a single form of removal proceedings. David Weissbrodt, Immigration Law and Procedure in a Nutshell § 8-1 (4th ed. 1998). A nolo contendere plea constitutes a conviction for purposes of immigration law. Qureshi v. Immigration Naturalization Serv.,519 F.2d 1174, 1175-76 (5th Cir. 1975).
[3] While the Court recognizes that the matter presently before it is technically a motion pursuant to Rule 59 or Rule 60, the parties have addressed the matter as an application for post-conviction relief pursuant to § 10-9.1-1. During oral arguments on April 30, 2008, the petitioner's counsel presented extensive arguments in support of the petitioner's application and the State, represented by a Special Assistant Attorney General, presented similarly extensive arguments in opposition to the petitioner's application. In addition, at that hearing the Court engaged in a spirited exchange with counsel for both parties and was impressed by their thorough argumentation on the merits of the petitioner's application. During the entirety of that hearing, and in conversations in chambers afterward, the petitioner, the State, and the Court never deviated from expressly considering this matter as an application for post-conviction relief. In light of the parties' consideration of this matter as an application for post-conviction relief pursuant to § 10-9.1-1, this Court is inclined to preserve valuable judicial time and the resources of the parties by elevating substance over form. See State v. Williams, 122 R.I. 32, 404 A.2d 814,817 (R.I. 1979) (refusing to "elevate form over substance . . . [which would] result in a waste of valuable judicial time, and needlessly prolong this matter. Accordingly, we treat this appeal as if it were from the denial of an application for post-conviction relief."). As such, the Court construes this matter as an application for post-conviction relief pursuant to § 10-9.1-1.
[4] Unfortunately, the Alejo decision provides limited guidance because the Supreme Court addressed three substantially different claims simultaneously without distinguishing the requirements imposed by § 12-12-22, the Sixth Amendment, or "the interest of justice."655 A.2d at 692-93.
[5] The Court notes that these guides were available for the asking at the State Law Library, located in the very building in which Brito-Batista entered his plea.
[6] It bears mentioning that, according to the Census Bureau, just three years after Brito-Batista entered his plea, half (32,884) the members of Rhode Island's non-English speaking households (64,257) were born outside this country. United States Census Bureau, Census 2000, America Speaks: Selected Characteristics of Households by Linguistic Isolation for Rhode Island, tbl. 41b, available athttp://www.census.gov/population/socdemo/hh-fam/AmSpks/82%20RI%20hh.xls.