Justice Alito,
with whom The Chief Justice joins, concurring in the judgment.
I concur in the judgment because a criminal defense attorney fails to provide effective assistance within the meaning of Strickland v. Washington, 466 U. S. 668 (1984), if the attorney misleads a noncitizen client regarding the removal consequences of a conviction. In my view, such an attorney must (1) refrain from unreasonably providing incorrect advice and (2) advise the defendant that a criminal conviction may have adverse immigration consequences and that, if the alien wants adviee on this issue, the alien should consult an immigration attorney. I do not agree with the Court that the attorney must attempt to explain what those consequences may be. As the Court concedes, “[immigration law can be complex”; “it is a legal specialty of its own”; and “[s]ome members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it.” Ante, at 369. The Court nevertheless holds that a criminal defense attorney must provide advice in this specialized area in those cases in which the law is “succinct and straightforward” — but not, perhaps, in other situations. Ibid. This vague, halfway test will lead to much confusion and needless litigation.
I
Under Strickland, an attorney provides ineffective assistance if the attorney’s representation does not meet reasonable professional standards. 466 U. S., at 688. Until today, the longstanding and unanimous position of the federal *376 courts was that reasonable defense counsel generally need only advise a client about the direct consequences of a criminal conviction. See, e. g., United States v. Gonzalez, 202 F. 3d 20, 28 (CA1 2000) (ineffective-assistance-of-counsel claim fails if “based on an attorney’s failure to advise a client of his plea’s immigration consequences”); United States v. Banda, 1 F. 3d 354, 355 (CA5 1993) (holding that “an attorney’s failure to advise a client that deportation is a possible consequence of a guilty plea does not constitute ineffective assistance of counsel”); see generally Chin & Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L. Rev. 697, 699 (2002) (hereinafter Chin & Holmes) (noting that “virtually all jurisdictions” — including “eleven federal circuits, more than thirty states, and the District of Columbia” — “hold that defense counsel need not discuss with their clients the collateral consequences of a conviction,” including deportation). While the line between “direct” and “collateral” consequences is not always clear, see ante, at 364, n. 8, the collateral-consequences rule expresses an important truth: Criminal defense attorneys have expertise regarding the conduct of criminal proceedings. They are not expected to possess — and very often do not possess — expertise in other areas of the law, and it is unrealistic to expect them to provide expert advice on matters that lie outside their area of training and experience.
This case happens to involve removal, but criminal convictions can carry a wide variety of consequences other than conviction and sentencing, including civil commitment, civil forfeiture, the loss of the right to vote, disqualification from public benefits, ineligibility to possess firearms, dishonorable discharge from the Armed Forces, and loss of business or professional licenses. Chin & Holmes 705-706. A criminal conviction may also severely damage a defendant’s reputation and thus impair the defendant’s ability to obtain future employment or business opportunities. All of those consequences are “seriou[s],” see ante, at 374, but this Court has *377 never held that a criminal defense attorney’s Sixth Amendment duties extend to providing advice about such matters.
The Court tries to justify its dramatic departure from precedent by pointing to the views of various professional organizations. See ante, at 367 (“The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation”). However, ascertaining the level of professional competence required by the Sixth Amendment is ultimately a task for the courts. E. g., Roe v. Flores-Ortega, 528 U. S. 470, 477 (2000). Although we may appropriately consult standards promulgated by private bar groups, we cannot delegate to these groups our task of determining what the Constitution commands. See Strickland, supra, at 688 (explaining that “[prevailing norms of practice as reflected in American Bar Association standards ... are guides to determining what is reasonable, but they are only guides”). And we must recognize that such standards may represent only the aspirations of a bar group rather than an empirical assessment of actual practice.
Even if the only relevant consideration were “prevailing professional norms,” it is hard to see how those norms can support the duty the Court today imposes on defense counsel. Because many criminal defense attorneys have little understanding of immigration law, see ante, at 369, it should follow that a criminal defense attorney who refrains from providing immigration advice does not violate prevailing professional norms. But the Court’s opinion would not just require defense counsel to warn the client of a general risk of removal; it would also require counsel, in at least some cases, to specify what the removal consequences of a conviction would be. See ante, at 368-369.
The Court’s new approach is particularly problematic because providing advice on whether a conviction for a particular offense will make an alien removable is often quite complex. “Most crimes affecting immigration status are not *378 specifically mentioned by the [Immigration and Nationality Act (INA)], but instead fall under a broad category of crimes, such as crimes involving moral turpitude or aggravated felonies.” M. Garcia & L. Eig, CRS Report for Congress, Immigration Consequences of Criminal Activity (Sept. 20,2006) (summary) (emphasis in original). As has been widely acknowledged, determining whether a particular crime is an “aggravated felony” or a “crime involving moral turpitude [(CIMT)]” is not an easy task. See R. McWhirter, ABA, The Criminal Lawyer’s Guide to Immigration Law: Questions and Answers 128 (2d ed. 2006) (hereinafter ABA Guidebook) (“Because of the increased complexity of aggravated felony law, this edition devotes a new [30-page] chapter to the subject”); id., §5.2, at 146 (stating that the aggravated felony list at 8 U. S. C. § 1101(a)(43) is not clear with respect to several of the listed categories, that “the term ‘aggravated felonies’ can include misdemeanors,” and that the determination of whether a crime is an “aggravated felony” is made “even more difficult” because “several agencies and courts interpret the statute,” including Immigration and Customs Enforcement, the Board of Immigration Appeals (BIA), and Federal Circuit and District Courts considering immigration-law and criminal-law issues); ABA Guidebook §4.65, at 130 (“Because nothing is ever simple with immigration law, the terms ‘conviction,’ ‘moral turpitude,’ and ‘single scheme of criminal misconduct’ are terms of art”); id., §4.67, at 130 (“[T]he term ‘moral turpitude’ evades precise definition”).
Defense counsel who consults a guidebook on whether a particular crime is an “aggravated felony” will often find that the answer is not “easily ascertained.” For example, the ABA Guidebook answers the question “Does simple possession count as an aggravated felony?” as follows: “Yes, at least in the Ninth Circuit.” Id., §5.35, at 160 (emphasis added). After a dizzying paragraph that attempts to explain the evolution of the Ninth Circuit’s view, the ABA Guidebook continues: “Adding to the confusion, however, is that the Ninth *379 Circuit has conflicting opinions depending on the context on whether simple drug possession constitutes an aggravated felony under 8 U. S. C. § 1101(a)(43).” Id., § 5.35, at 161 (citing cases distinguishing between whether a simple possession offense is an aggravated felony “for immigration purposes” or for “sentencing purposes”). The ABA Guidebook then proceeds to explain that “attempted possession,” id., § 5.36, at 161 (emphasis added), of a controlled substance is an aggravated felony, while “[c]onviction under the federal accessory after the fact statute is probably not an aggravated felony, but a conviction for accessory after the fact to the manufacture of methamphetamine is an aggravated felony,” id., §5.37, at 161 (emphasis added). Conspiracy or attempt to commit drug trafficking are aggravated felonies, but “[s]olieitation is not a drug-trafficking offense because a generic solicitation offense is not an offense related to a controlled substance and therefore not an aggravated felony.” Id., §5.41, at 162.
Determining whether a particular crime is one involving moral turpitude is no easier. See id., at 134 (“Writing bad checks may or may not be a CIMT” (emphasis added)); ibid. (“[RJeckless assault coupled with an element of injury, but not serious injury, is probably not a CIMT” (emphasis added)); id., at 135 (misdemeanor driving under the influence is generally not a CIMT, but may be a CIMT if the DUI results in injury or if the driver knew that his license had been suspended or revoked); id., at 136 (“If there is no element of actual injury, the endangerment offense may not be a CIMT” (emphasis added)); ibid. (‘Whether [a child abuse] conviction involves moral turpitude may depend on the subsection under which the individual is convicted. Child abuse done with criminal negligence probably is not a CIMT” (emphasis added)).
Many other terms of the INA are similarly ambiguous or may be confusing to practitioners not versed in the intricacies of immigration law. To take just a few examples, it may *380 be hard, in some cases, for defense counsel even to determine whether a client is an alien,[1] or whether a particular state disposition will result in a “conviction” for purposes of federal immigration law.[2] The task of offering advice about the immigration consequences of a criminal conviction is further complicated by other problems, including significant variations among Circuit interpretations of federal immigration statutes; the frequency with which immigration law changes; different rules governing the immigration consequences of juvenile, first-offender, and foreign convictions; and the relationship between the “length and type of sentence” and the determination “whether [an alien] is subject to removal, eligible for relief from removal, or qualified to become a naturalized citizen,” Immigration Law and Crimes §2:1, at 2-2 to 2-3.
In short, the professional organizations and guidebooks on which the Court so heavily relies are right to say that “noth *381 ing is ever simple with immigration law” — including the determination whether immigration law clearly makes a particular offense removable. ABA Guidebook §4.65, at 130; Immigration Law and Crimes §2:1. I therefore cannot agree with the Court’s apparent view that the Sixth Amendment requires criminal defense attorneys to provide immigration advice.
The Court tries to downplay the severity of the burden it imposes on defense counsel by suggesting that the scope of counsel’s duty to offer advice concerning deportation consequences may turn on how hard it is to determine those consequences. Where “the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence[s]” of a conviction, the Court says, counsel has an affirmative duty to advise the client that he will be subject to deportation as a result of the plea. Ante, at 368. But “[w]hen the law is not succinct and straightforward ..., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.” Ante, at 369. This approach is problematic for at least four reasons.
First, it will not always be easy to tell whether a particular statutory provision is “succinct, clear, and explicit.” How can an attorney who lacks general immigration-law expertise be sure that a seemingly clear statutory provision actually means what it seems to say when read in isolation? What if the application of the provision to a particular case is not clear but a cursory examination of case law or administrative decisions would provide a definitive answer? See Immigration Law and Crimes §2:1, at 2-2 (“Unfortunately, a practitioner or respondent cannot tell easily whether a conviction is for a removable offense.... [T]he cautious practitioner or apprehensive respondent will not know conclusively the future immigration consequences of a guilty plea”).
Second, if defense counsel must provide advice regarding only one of the many collateral consequences of a criminal *382 conviction, many defendants are likely to be misled. To take just one example, a conviction for a particular offense may render an alien excludable but not removable. If an alien charged with such an offense is advised only that pleading guilty to such an offense will not result in removal, the alien may be induced to enter a guilty plea without realizing that a consequence of the plea is that the alien will be unable to reenter the United States if the alien returns to his or her home country for any reason, such as to visit an elderly parent or to attend a funeral. See ABA Guidebook § 4.14, at 111 (“Often the alien is both excludable and removable. At times, however, the lists are different. Thus, the oddity of an alien that is inadmissible but not deportable. This alien should not leave the United States because the government will not let him back in” (emphasis in original)). Incomplete legal advice may be worse than no advice at all because it may mislead and may dissuade the client from seeking advice from a more knowledgeable source.
Third, the Court’s rigid constitutional rule could inadvertently head off more promising ways of addressing the underlying problem — such as statutory or administrative reforms requiring trial judges to inform a defendant on the record that a guilty plea may carry adverse immigration consequences. As amici point out, “28 states and the District of Columbia have already adopted rules, plea forms, or statutes requiring courts to advise criminal defendants of the possible immigration consequences of their pleas.” Brief for State of Louisiana et al. 25; accord, Chin & Holmes 708 (“A growing number of statess require advice about deportation by statute or court rule”). A nonconstitutional rule requiring trial judges to inform defendants on the record of the risk of adverse immigration consequences can ensure that a defendant receives needed information without putting a large number of criminal convictions at risk; and because such a warning would be given on the record, courts would not later have to determine whether the defendant was misrepresenting the *383 advice of counsel. Likewise, flexible statutory procedures for withdrawing guilty pleas might give courts appropriate discretion to determine whether the interests of justice would be served by allowing a particular defendant to withdraw a plea entered into on the basis of incomplete information. Cf. United States v. Russell, 686 F. 2d 35, 39-40 (CADC 1982) (explaining that a district court’s discretion to set aside a guilty plea under the Federal Rules of Criminal Procedure should be guided by, among other considerations, “the possible existence of prejudice to the government’s case as a result of the defendant's untimely request to stand trial” and “the strength of the defendant’s reason for withdrawing the plea, including whether the defendant asserts his innocence of the charge”).
Fourth, the Court’s decision marks a major upheaval in Sixth Amendment law. This Court decided Strickland in 1984, but the majority does not cite a single case, from this or any other federal court, holding that criminal defense counsel’s failure to provide advice concerning the removal consequences of a criminal conviction violates a defendant’s Sixth Amendment right to counsel. As noted above, the Court’s view has been rejected by every Federal Court of Appeals to have considered the issue thus far. See, e.g., Gonzalez, 202 F. 3d, at 28; Banda, 1 F. 3d, at 355; Chin & Holmes 697, 699. The majority appropriately acknowledges that the lower courts are “now quite experienced with applying Strickland,” ante, at 372, but it casually dismisses the longstanding and unanimous position of the lower federal courts with respect to the scope of criminal defense counsel’s duty to advise on collateral consequences.
The majority seeks to downplay its dramatic expansion of the scope of criminal defense counsel’s duties under the Sixth Amendment by claiming that this Court in Hill v. Lockhart, 474 U. S. 52 (1985), similarly “applied Strickland to a claim that counsel had failed to advise the client regarding his parole eligibility before he pleaded guilty. ” Ante, at 371. That *384 characterization of Hill obscures much more than it reveals. The issue in Hill was whether a criminal defendant’s Sixth Amendment right to counsel was violated where counsel misinformed the client about his eligibility for parole. The Court found it “unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of ‘prejudice.’ ” 474 U. S., at 60. Given that Hill expressly and unambiguously refused to decide whether criminal defense counsel must avoid misinforming his or her client as to one consequence of a criminal conviction (parole eligibility), that case plainly provides no support whatsoever for the proposition that counsel must affirmatively advise his or her client as to another collateral consequence (removal). By the Court’s strange logic, Hill would support its decision here even if the Court had held that misadvice concerning parole eligibility does not make counsel’s performance objectively unreasonable. After all, the Court still would have “applied Strickland” to the facts of the case at hand.
II
While mastery of immigration law is not required by Strickland, several considerations support the conclusion that affirmative misadvice regarding the removal consequences of a conviction may constitute ineffective assistance.
First, a rule prohibiting affirmative misadvice regarding a matter as crucial to the defendant’s plea decision as deportation appears faithful to the scope and nature of the Sixth Amendment duty this Court has recognized in its past cases. In particular, we have explained that “a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not ‘a reasonably competent attorney’ and the advice was not ‘within the range of competence demanded of attor *385 neys in criminal cases.’” Strickland, 466 U. S., at 687 (quoting McMann v. Richardson, 397 U. S. 759, 770, 771 (1970); emphasis added). As the Court appears to acknowledge, thorough understanding of the intricacies of immigration law is not “within the range of competence demanded of attorneys in criminal cases.” See ante, at 369 (“Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it”). By contrast, reasonably competent attorneys should know that it is not appropriate or responsible to hold themselves out as authorities on a difficult and complicated subject matter with which they are not familiar. Candor concerning the limits of one's professional expertise, in other words, is within the range of duties reasonably expected of defense attorneys in criminal cases. As the dissenting judge on the Kentucky Supreme Court put it, “I do not believe it is too much of a burden to place on our defense bar the duty to say, T do not know.’ ” 253 S. W. 3d 482, 485 (2008).
Second, incompetent advice distorts the defendant's decisionmaking process and seems to call the fairness and integrity of the criminal proceeding itself into question. See Strickland, 466 U. S., at 686 (“In giving meaning to the requirement [of effective assistance of counsel], we must take its purpose — to ensure a fair trial — as the guide”). When a defendant opts to plead guilty without definitive information concerning the likely effects of the plea, the defendant can fairly be said to assume the risk that the conviction may carry indirect consequences of which he or she is not aware. That is not the ease when a defendant bases the decision to plead guilty on counsel's express misrepresentation that the defendant will not be removable. In the latter case, it seems hard to say that the plea was entered with the advice of constitutionally competent counsel — or that it embodies a voluntary and intelligent decision to forsake constitutional *386 rights. See ibid. (“The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result”).
Third, a rule prohibiting unreasonable misadvice regarding exceptionally important collateral matters would not deter or interfere with ongoing political and administrative efforts to devise fair and reasonable solutions to the difficult problem posed by defendants who plead guilty without knowing of certain important collateral consequences.
Finally, the conclusion that affirmative misadvice regarding the removal consequences of a conviction can give rise to ineffective assistance would, unlike the Court's approach, not require any upheaval in the law. As the Solicitor General points out, “[t]he vast majority of the lower courts considering claims of ineffective assistance in the plea context have [distinguished] between defense counsel who remain silent and defense counsel who give affirmative misadvice.” Brief for United States as Amicus Curiae 8 (citing cases). At least three Courts of Appeals have held that affirmative misadvice on immigration matters can give rise to ineffective assistance of counsel, at least in some circumstances.[3] And several other Circuits have held that affirmative misadvice concerning nonimmigration consequences of a conviction can violate the Sixth Amendment even if those consequences *387 might be deemed “collateral.”[4] By contrast, it appears that no court of appeals holds that affirmative misadvice concerning collateral consequences in general and removal in particular can never give rise to ineffective assistance. In short, the considered and thus far unanimous view of the lower federal courts charged with administering Strickland clearly supports the conclusion that the Kentucky Supreme Court’s position goes too far.
In concluding that affirmative misadvice regarding the removal consequences of a criminal conviction may constitute ineffective assistance, I do not mean to suggest that the Sixth Amendment does no more than require defense counsel to avoid misinformation. When a criminal defense attorney is aware that a client is an alien, the attorney should advise the client that a criminal conviction may have adverse consequences under the immigration laws and that the client should consult an immigration specialist if the client wants advice on that subject. By putting the client on notice of the danger of removal, such advice would significantly reduce the chance that the client would plead guilty under a mistaken premise.
III
In sum, a criminal defense attorney should not be required to provide advice on immigration law, a complex specialty *388 that generally lies outside the scope of a criminal defense attorney’s expertise. On the other hand, any competent criminal defense attorney should appreciate the extraordinary importance that the risk of removal might have in the client’s determination whether to enter a guilty plea. Accordingly, unreasonable and incorrect information concerning the risk of removal can give rise to an ineffectiveness claim. In addition, silence alone is not enough to satisfy counsel’s duty to assist the client. Instead, an alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject.

 Citizens are not deportable, but “[questions of citizenship are not always simple.” ABA Guidebook §4.20, at 113 (explaining that U. S. citizenship conferred by blood is “‘derivative,’” and that “[d]erivative citizenship depends on a number of confusing factors, including whether the citizen parent was the mother or father, the immigration laws in effect at the time of the parents’ and/or defendant’s birth, and the parents’ marital status”).

 “A disposition that is not a ‘conviction’ under state law may still be a ‘conviction’ for immigration purposes.” Id., §4.32, at 117 (citing Matter of Salamr-Regino, 23 I. & N. Dec. 223, 231 (BIA 2002) (en banc)). For example, state law may define the term “conviction” not to include a deferred adjudication, but such an adjudication would be deemed a conviction for purposes of federal immigration law. See ABA Guidebook §4.37; accord, D. Kesselbrenner & L. Rosenberg, Immigration Law and Crimes §2:1, p. 2-2 (2009) (hereinafter Immigration Law and Crimes) (“A practitioner or respondent will not even know whether the Department of Homeland Security (DHS) or the Executive Office for Immigration Review (EOIR) will treat a particular state disposition as a conviction for immigration purposes. In fact, the [BIA] treats certain state criminal dispositions as convictions even though the state treats the same disposition as a dismissal”).

 See United States v. Kwan, 407 F. 3d 1005, 1015-1017 (CA9 2005); United States v. Couto, 311 F. 3d 179, 188 (CA2 2002); Downs-Morgan v. United States, 765 F. 2d 1534, 1540-1541 (CA11 1985) (limiting holding to the facts of the case); see also Santos-Sanchez v. United States, 548 F. 3d 327, 333-334 (CA5 2008) (concluding that counsel’s advice was not objectively unreasonable where counsel did not purport to answer questions about immigration law, did not claim any expertise in immigration law, and simply warned of ‘‘possible” deportation consequence; use of the word “possible” was not an affirmative misrepresentation, even though it could indicate that deportation was not a certain consequence).

 See Hill v. Lockhart, 894 F. 2d 1009, 1010 (CA8 1990) (en banc) (“[TJhe erroneous parole-eligibility advice given to Mr. Hill was ineffective assistance of counsel under Strickland v. Washington”); Sparks v. Sowders, 852 F. 2d 882, 885 (CA6 1988) (“[G]ross misadvice concerning parole eligibility can amount to ineffective assistance of counsel”); id., -At 886 (Kennedy, J., concurring) (“When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject”); Strader v. Garrison, 611 F. 2d 61, 65 (CA4 1979) (“[T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel”).